## Austin & Northwestern Railroad Company et al. v. John O. Cluck.

No. 1247.   Decided December 14, 1903.

**1.—Personal Injury—Power to Require Examination of Person.**
Courts can not compel a plaintiff seeking to recover for injuries to the person to submit to examination of his person by physicians appointed by the court to ascertain the nature and extent of his injuries. (Pp. 175-183.)

**2.—Same—Refusal to Submit to Examination—Evidence.**
A plaintiff seeking to recover for injuries to the person may be cross-examined and required to answer as to his refusal to submit to personal examination by physicians appointed for that purpose. (Pp. 183, 184.)

Error to the Court of Civil Appeals for the Third District, in an appeal from Travis County.

Cluck sued the railway companies and recovered judgment, which was affirmed on their appeal. The appellants thereupon obtained writ of error.

*S. R. Fisher* and *Baker, Botts, Baker & Lovett,* for plaintiffs in error.—It was defendants' right, in the interest of justice and with the view of ascertaining the real facts, to have plaintiff submit himself to a physical examination by competent physicians to be appointed by the court without suggestion by the defendants or their counsel; and, the plaintiff having testified under oath that he was unwilling to submit himself to such examination and that he had submitted himself to examination by physicians of his own selection only, whose testimony would be offered on the trial of the cause in support of the alleged injuries and ailments of which he complained, the court erred in not sustaining defendants' motion to require plaintiff to submit himself to a physical examination with the view of determining the nature and extent of the injuries of which he complained, their cause and probable duration. International & G. N. Ry. Co. v. Underwood, 64 Texas, 463; Mo. Pac. Ry. Co. v. Johnson, 72 Texas, 95; Railway Co. v. Norfleet, 78 Texas, 321; Schroeder v. Railway Co., 47 Iowa, 375; Lane v. Spokane Falls (Wash.), 14 Am. and Eng. R. R. Cases (N. S.), 436; City of South Bend v. Turner, 156 Ind., 418; Graves v. Battle Creek, 95 Mich., 266.

The court erred, while the plaintiff was on the stand under cross-examination by defendants' counsel, in refusing, upon objection interposed by plaintiff's counsel, to permit defendants to show by him that they had requested him to submit himself to a physical examination by a committee of physicians to be appointed by the court without suggestion on the part of defendants or their counsel as to whom the court should appoint.    Freeport v. Isbell, 93 Ill:, 381; Stack v. N. Y., etc., Railway Co., 177 Mass., 155; Pennsylvania Co. v. Newmeyer, 129 Ind., 401; Turnpike Co. v. Baily, 37 Ohio St., 107; Elfêrs v. Woolley, 116 N. Y., 294.

Even if it be conceded that the right to compel a plaintiff to submit to a physical examination does not exist under any circumstances, still the fact remains, that, upon request or application therefor, he could voluntarily assent, and his refusal is a fact or circumstance proper to go to the jury as tending to show that his claim is fictitious or that his condition is not such as it is claimed to be; therefore, the court should have permitted the defendants to show plaintiff's refusal of a proper opportunity to test his physical condition by skilled physicians to be appointed by the court without suggestion from defendants or their counsel.

The production in court, for analysis by proper experts and physicians, of a specimen of urine of a plaintiff, who has testified himself and introduced the testimony of physicians as to the condition of his kidneys, bladder and other organs connected therewith, as to urine voided by him and as to pus and mucus discharged from his penis, and also as to the analysis of his urine for the purpose of discovering the existence of albumen and sugar, and as to diseases which might result from the condition testified to, should, upon proper application therefor, and after having given him an opportunity to comply with the request, have been ordered by the court, the privacy of his person not being thereby invaded and his rights being fully protected by the requirement that such specimen should be produced in court for analysis by a committee of competent physicians to be appointed by the court; and the court erred in not permitting the question set out in the third assignment of error to be asked and answered and in not requiring the plaintiff to produce in court a specimen of his urine for examination and analysis under the conditions stated in the foregoing assignments.    Cleveland C. C. & St. L. Ry. Co. v. Huddleston, 151 Ind., 542.    See also authorities supra.

The request for a specimen of plaintiff's urine for analysis by skilled physicians to be appointed by the court was timely and reasonable.    The petition contained no allegations to the effect that plaintiff's injuries had resulted in Bright's disease or any other specific ailment, or that albumen or sugar had been secreted in the urine.    These facts were not suggested by the pleadings of plaintiff, nor was any evidence offered tending to show their existence or relation to the injuries complained of until developed on the trial through the testimony of plaintiff and his physician, Dr. Mitchell.    To thus permit plaintiff to have detailed in evidence by

his physician the result of an analysis of plaintiff's urine and to rule that plaintiff had the right to refuse to furnish a specimen under the conditions stated, followed by a refusal of the request to compel him to do so, was unquestionably the exclusion of vitally material evidence and flagrantly erroneous, unless it be the law that plaintiff may deny the defendant the use of the means of evidence affirmed by him to be legitimate and proper.

*John Dowell* and *H. N. Swain,* for defendant in error.—In the absence of any statutory provision making such an examination compulsory, the court has no power to appoint a board of physicians and to compel plaintiff to submit to an examination by them if plaintiff objects thereto. Galveston H. & S. A. Ry. Co. v. Sherwood, 67 S. W. Rep., 776; Railway v. White, 51 S. W. Rep., 855; Railway v. Langston, 19 Texas Civ. App., 568; Gulf C. & S. F. Ry. Co. v. Pendery, 14 Texas Civ. App., 60; Union P. Ry. Co. v. Botsford, 141 U. S., 253; Stack v. New York, etc., Ry., 177 Mass., 157; Mills v. Wilmington City Ry., 1 Marr. (Del.), 269; Parker v. Enslow, 102 Ill., 272; Joliet St. Ry Co. v. Call, 143 Ill., 178; Peoria, etc., Ry. Co. v. Rice, 144 Ill., 227; McQuigan v. Delaware, etc., Ry. Co., 129 N. Y., 50; Elfers v. Woolley, 116 N. Y., 294; Cole v. Fall Brook Coal Co., 159 N. Y., 59.

The application for an appointment by the court of a board of physicians to examine plaintiff, if proper to be made under any circumstances, should have been made before announcement of ready for trial, and a sufficient time prior thereto that the examination might be made deliberately and carefully, without interfering with the progress of the trial. Miami, etc., Turnpike Co. v. Baily, 37 Ohio St., 104; Savannah Ry. Co. v. Wainwright, 99 Ga., 255; Galesburg v. Benedict, 22 Ill. App., 111; Southern Kansas Ry. Co. v. Michaels, 57 Kan., 480; Kinney v. Springfield, 35 Mo. App., 97; Stuart v. Havens, 17 Neb., 211; Chadron v. Glover, 43 Neb., 737; Sioux City, etc., Ry. Co. v. Finlayson, 16 Neb., 578.

If the court has the power, under any circumstances, to compel plaintiff to submit to such an examination, defendants' demand for such an examination is not a matter of right, but it rests within the sound discretion of the trial court to order or refuse to order the examination, which discretion will not be interfered with on appeal unless shown to be manifestly abused. Savannah F. & W. Ry. Co. v. Wainwright, 99 Ga., 255; Shepard v. Missouri P. Ry. Co., 85 Mo., 629; Hill v. Sedalia, 64 Mo. App., 495; Marler v. Springfield, 65 Mo. App., 301; Owens v. Kansas City, etc., Ry. Co., 95 Mo., 169; Smith v. Spokane, 16 Wash., 403; Sidekum v. Railroad, 93 Mo., 400; 16 Am. and Eng. Enc. of Law, 2 ed., 813, sec. 3, and authorities cited in note 6.

The application by the defendants for the appointment of a board of physicians to examine plaintiff should have been accompanied by an affidavit or other competent proof that there was a necessity for such an examination or as to what the defendants believed would be developed

by such an examination. Galveston H. & S. A. Ry. Co. v. Sherwood, 67 S. W. Rep., 777; Terre Haute & I. Ry. Co. v. Brunker, 26 N. E. Rep., 181; City of Galesburg v. Benedict, 22 Ill. App., 114.

It being plaintiff's legal right to refuse to be examined by a board of physicians to be appointed by the court, it was his legal right to have such fact withheld from the consideration of the jury. Turnpike Co. v. Baily, 37 Ohio, 107.

If under any circumstances such a refusal can be a matter proper to be considered by the jury, then it can be proper only where plaintiff's refusal is an unreasonable one. Union Pac. Ry. Co. v. Botsford, 141 U. S., 253; Freeport v. Isbell, 93 Ill., 381; Pennsylvania Co. v. New-meyer, 129 Ind., 412; Stack v. New York, etc., Ry. Co., 177 Mass., 155.

In the absence of any statutory provision compelling plaintiff to submit a sample of his urine for chemical examination the court has no power to compel plaintiff to submit same.

If the court, under any circumstances, has the power to compel plaintiff to submit a sample of his urine for chemical examination, defendants' demand for same is not a matter of right, but it rests within the sound discretion of the trial court, which discretion will not be interfered with on appeal unless manifestly abused.

BROWN, Associate Justice.—From the opinion of the honorable Court of Civil Appeals we copy the following statement of the facts as found by that court:

"This is a suit for damages caused by the plaintiff's falling into a well dug, operated and controlled by the Austin & Northwestern Railroad Company. There was a jury trial, resulting in a verdict and judgment for the plaintiff for $2000, and the defendants have appealed.

"The testimony shows that the Houston & Texas Central Railroad Company since the accident occurred has succeeded to all the rights and liabilities of the Austin & Northwestern Railroad Company, and if one company is liable, both are.

"The accident occurred at night, and the verdict of the jury involves a finding that the Austin & Northwestern Railroad Company was guilty of negligence in failing to keep the well properly covered, and that the plaintiff was not guilty of contributory negligence, as charged in the answer of the defendants, and that, as a direct result of the defendants' negligence, the plaintiff was injured to the extent of $2000. The record contains evidence sufficient to support all of these findings; and therefore, the objections to the verdict are overruled.

"The plaintiff charged in his petition that as a result of his falling in the well, he was permanently injured in his back, sides, kidneys, hips, hip joints, spine, bladder, stomach and bowels.

"Within proper time the defendants made a motion, stating that the plaintiff had been examined by two physicians of his own selection, who would testify in his behalf; that he had not been examined by physicians selected by the defendants, or by any other physicians, and re-

quested the trial court to appoint a committee of two or more competent physicians, and compel the plaintiff to submit to an examination by the physicians so appointed, in order that the defendants might have the benefit of the testimony of such physicians.

"In support of the motion it was shown that the plaintiff had refused to consent to the appointment of such committee, and to the examination requested. The court overruled the motion, and that ruling is assigned as error."

The plaintiff in error asserts that it had the right at the trial to have the court appoint a committee of physicians to make a physical examination of the defendant in error to qualify them to testify before the jury as to the injuries received by Cluck, and their effect. The right to have such examination is supported by the greater number of decisions of the courts of the States of this Union and by the text writers. The following cases support the right asserted: Richmond & D. Ry. Co. v. Childress, 82 Ga., 719; Shepard v. Missouri P. Ry. Co., 85 Mo., 629; Alabama G. S. Ry. Co. v. Hill, 90 Ala., 71; White v. Milwaukee City Ry. Co., 61 Wis., 536; Atchison T. & S. F. Ry. Co. v. Thul, 29 Kan., 466; Schroeder v. Chicago R. I. & P. Ry. Co., 47 Iowa, 375; Sibley v. Smith, 46 Ark., 275; Missouri & M. T. Ry. Co. v. Baily, 37 Ohio St., 104; Lane v. Spokane, F. & N. Ry. Co., 21 Wash., 119; Wanek v. City of Winona, 46 Law. Rep. Ann., 448; Graves v. City of Battle Creek, 95 Mich., 266; City of South Bend v. Turner, 156 Ind., 418; Brown v. Chicago M. & St. P. Ry. Co., 95 N. W., 153. The Supreme Court of Missouri first held that the courts had no power to compel a party to a civil case to submit to a physical examination. Loyd v. Hannibal & St. Joe Ry. Co., 53 Mo., 515. After vacillating, and qualifying their decisions in various particulars, that court, in Shepard v. Missouri P. Ry. Co., before cited, announced the doctrine contended for by the railroad company in this case. The decisions of the Supreme Court of the State of Indiana cover all phases of this question from an absolute denial to the assertion of the right in a qualified sense, as announced in the case of City of South Bend v. Turner, above cited. That case has been since greatly qualified, and their decisions are in such conflict on the question that they are of little value as authority. The case of Richmond & D. Ry. Co. v. Childress, 82 Ga., 719, rests upon the following statutory provision: "Every court has power to control, in furtherance of justice, the conduct of its officers and all other persons connected with a judicial proceeding before it, in every matter appertaining thereto." This statute authorized the examination in the State of Georgia, hence that case is not authority upon the question of power under the common law. The authorities above stated, as well as many cases which we have not cited, fully sustain the conclusion of the Supreme Court of Indiana in the case of City of South Bend v. Turner, which is embodied in the following propositions: "(1) That trial courts have the power to order the medical examination by experts of the injured parts of a plaintiff who is seeking to recover damages there-

for; (2) that a defendant has no absolute right to demand the enforcement of such an order, but the motion therefor is addressed to the sound discretion of the trial court; (3) that the exercise of such discretion is reviewable on appeal, and correctible in cases of abuse; (4) that the examination should be applied for and made before entering upon the trial, and should be ordered and conducted under the direction of the court, whenever it fairly appears that the ends of justice require a more certain ascertainment of important facts which can only be disclosed or fully elucidated by such an examination, and such an examination may be made without danger to the plaintiff's life or health, or the infliction of serious pain; (5) that the refusal of·the motion, when the circumstances appearing in the record present a reasonably clear case for the examination under the rules stated, is such an abuse of discretion in the trial court as will operate to reverse a judgment for the plaintiff; (6) that such an order may be enforced, not by punishment as for a contempt, but by delaying or dismissing the proceeding."

Counsel for the defendant in error deny the authority of the court to require the plaintiff in this case to submit to a physical examination by a committee to be appointed by the court, in which they are supported by these authorities: Parker v. Enslow, 102 Ill., 279; Mc-Quigan v. Delaware L. & W. Ry. Co., 129 N. Y., 50; Stack v. New York, etc., Ry. Co., 177 Mass., 155; Peoria D. & E. Ry. Co. v. Rice, 144 Ill., 232; Roberts v. Ogdensburgh & L. C. Ry. Co., 29 Hun, 154; Union P. Ry. Co. v. Botsford, 141 U. S., 250. The question has been before this court in these cases: International & G. N. Ry. Co. v. Underwood, 64 Texas, 463; Missouri P. Ry. Co. v. Johnson, 72 Texas, 95; Gulf C. & S. F. Ry. Co. v. Norfleet, 78 Texas, 321; Gulf C. & S. F. Ry. Co. v. Butcher, 83 Texas, 309. In each case this court declined to decide the question now before us; therefore, it is practically a new one, which we must determine by the weight of authority, or upon the sounder reasoning, as derived from the provisions of our Constitution, the statutes and the common law.

After citing a number of cases to support their decision in the case of City of South Bend v. Turner, the Supreme Court of Indiana said: "These cases assert the doctrine that courts are instituted by the State to administer impartial justice to contending parties. ·In such contests it is the duty of the court to bestow upon the litigants equal and exact justice. .This can not be done without the court first obtaining the exact and full truth concerning the matters in controversy. Hence from this duty of the court to dispense exact justice is essentially implied all power necessary to its performance, which includes the power to make subservient to its order all persons and things that will afford the most reliable evidence." That honorable court gives no source from which it is claimed the courts derive the power to compel a party to submit to examination, but asserts that the duty to administer justice implies "all power necessary to its performance, which includes the

97 Supreme—12.

power to make subservient to its order all persons and things that will afford the most reliable evidence." If this proposition be well founded, then, indeed, the power of a court over the persons of parties who apply to it for adjustment of their rights is unlimited. This statement of judicial power is too broad to be accepted as correct; but that line of decisions can not be sustained by less comprehensive authority. The point we wish to call attention to is, that the court does not claim to derive its authority from either the common law, the Constitution of that State, or from the statutes of Indiana. Comment upon City of South Bend v. Turner is equivalent to a comment upon the other cases, because it is perhaps the best reasoned of all, and fairly represents them.

Article 5, section 8, of the Constitution of this State defines the jurisdiction and powers of the district courts in the following language: "The district court shall have original jurisdiction of all suits, complaints, or pleas whatever, without regard to any distinction between law and equity, when the matter in controversy shall be valued at or amount to five hundred dollars exclusive of interest;" and the Legislature has defined the jurisdiction of the district courts in the same language. The common law was adopted by the Congress of the Republic by enactment embraced in the following article, 3258, of the Revised Statutes: "The common law of England (so far as it is not inconsistent with the Constitution and laws of this State) shall, together with such Constitution and laws, be the rules of decision, and shall continue in force until altered or repealed by the Legislature." Whatever may be the powers of courts of other States, there can be no doubt that the courts of Texas must look to the Constitution of this State, the enactments of the Legislature, and the common law, for their authority to proceed as requested in this case, and, if the authority did not exist at common law, and has not been conferred by the Constitution, nor by the statutes of this State, then no court in Texas has the power to force any citizen to submit to a physical examination under such circumstances.

In the case of Messner v. Giddings, 65 Texas, 309, a judgment of the district court which had assumed to exercise authority over the estate of minors was under review; it was claimed that the authority was given by the Constitution, wherein it conferred on the district court all the powers of courts of equity. Speaking by Judge Stayton, the Supreme Court said: "If it is claimed that in the court, as a court of equity, under that clause (of the Constitution), the power existed, it must be replied, that the district court, whether as a court of law or a court of equity, had only such power as the Constitution gave it. There is no such thing as the inherent power of a court, if, by that, be meant a power which a court may exercise without a law authorizing it. That clause of the Constitution empowered district courts to exercise all the power given, whether the procedure necessary to accomplish that purpose be such as pertains to a court of law or a court of equity;

but it in no manner conferred upon such courts the power to exercise any and every power, which, at any time, may have been exercised by courts of chancery in England or elsewhere."

In Railroad v. Botsford, before cited, Judge Gray said: "No right is held more sacred, or is more carefully guarded by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law. So far as the books within our reach show, no order to inspect the body of a party in a personal action appears to have been made, or even moved for, in any of the English courts of common law, at any period of their history." Not one of the cases which declare the existence of the right cites a case from the English courts. To this, Justice Brewer, in the dissenting opinion filed on behalf of himself and Justice Brown of that court, replied: "The silence of common law authorities upon the question in cases of this kind proves little or nothing. The number of actions to recover damages, in early days, was, compared with later times, limited; and very few of those difficult questions as to the nature and extent of the injuries, which now form an important part of such litigations, were then presented to the courts. If an examination was asked, doubtless it was conceded without objection, as one of those matters the right to which was beyond dispute." The reply of Justice Brewer does not answer the argument of Justice Gray. The better rule was laid down in Russell v. Men of Devon, 2 D. & E. Rep., 667, where it was sought to maintain the action by argument from necessity and by reason of the analogy to other actions which were authorized by statute, but Justice Ashhurst said in that case: "It is a strong presumption that that which never has been done can not by law be done at all. And it is admitted that no such action as the present has ever been brought, though the occasion must have frequently happened. But it has been said that there is a principle of law on which this action may be maintained, namely, that where an individual sustains an injury by the neglect or default of another the law gives him a remedy. But there is another general principle of law which is more applicable to this case—that it is better that an individual should sustain an injury than that the public should suffer an inconvenience." We are of the opinion that the fact that no such examination was ever authorized by a court at common law in England, is conclusive that those courts had no authority under the common law to make such order. Judge Brewer's suggestion that all persons, who were ordered by the common law courts to be examined, must have submitted without contention, is contrary to the record of those courts, which show a stubborn resistance by the English people to every encroachment upon their personal liberty. It is more consistent with the facts to presume that lawyers and courts recognize that no such power existed, therefore there was no attempt to secure the examination.

In his dissenting opinion Judge Brewer said: "Certainly the power

of the courts and of the common law courts to compel a personal examination was in many cases often exercised and unchallenged. Indeed whenever the interest of justice seem to require such examination it was ordered. Instances of this are familiar; and in those instances the proceedings were, as a rule, adverse to the party whose examination was ordered." The learned judge does not cite a case to support his statement of the frequency of similar proceedings in the common law courts of England, but we presume he refers to three exceptional cases mentioned by Judge Gray: First, in divorce proceedings upon the ground of impotency, the court might order the examination of either party, but the exercise of this power "rests upon the interest which the public, as well as the parties, have in the question of upholding or dissolving the marriage state, and upon the necessity of such evidence to enable the court to exercise its jurisdiction; and is derived from the civil and canon law as administered in spiritual and ecclesiastical courts not proceeding in any respect according to the course of the common law." Second, in case a woman was convicted of a capital crime; the court might order an examination of her to determine whether she was quick with child, to prevent taking the life of the unborn infant. Third, if a widow claimed to be with child, the heir to the estate might cause her to be examined to ascertain whether she was or not with child, to protect the heirs against the fraud of having a false heir presented to inherit the estate. "But the learning and research of the counsel for the plaintiff in error have failed to produce an instance of its ever having been considered in any part of the United States, as suited to the habits and conditions of the people." Comments in quotation marks are from the main opinion in Railroad Company v. Botsford, and furnish complete answers to the arguments based upon the exceptional cases. The exceptions are the sole reliance of all cases which uphold the authority of the court to order such an examination, for a precedent showing that the right existed and was exercised by common law courts. They do not establish the fact, and the answers made by Judge Gray in the main opinion are so conclusive as to leave no doubt that, in truth and in fact, no such practice ever prevailed in the common law courts of England.

Since the common law furnishes no precedent for such proceeding, we must look to our Constitution and statutes for authority in our courts to order the examination. The provisions of our Constitution and of our statutes with regard to the practice and jurisdiction of courts are antagonistic to the spirit and purpose of such proceedings. To make sure of the immunity of the person of citizens from improper interference by any authority, the Convention which framed our Constitution adopted as a part of the Bill of Rights this section 9 of article 1: "The people shall be secure in their persons, houses, papers and possessions from all unreasonable seizures or searches, and no warrant to search any place or to seize any person or thing shall issue without describing them as near as may be, nor without probable cause supported by oath or affirmation." Whether, under this guaranty of immunity from inter-

ference with the person, the Legislature might authorize the physical examination of a party to a suit, is not before us for determination, but we are of the opinion that our Constitution secures every citizen of this State against any seizure or search of his person which is not plainly authorized by some law of this State.

In organizing the district courts, the Legislature has, with great particularity, prescribed what its powers shall be, and the writs and processes which may be issued. Among other things which may be done to secure testimony for the trial is the propounding of interrogatories by one party to the other for the purpose of getting a full and complete statement of his cause of action, or ground of defense. By this method a person or corporation sued for damages for personal injury may secure a complete statement of all the symptoms and a description of all the external injuries for which compensation is sought. It has been held by this court that the right to examine the opposite party by interrogatories is a substitute for a bill of discovery, which does not exist in our practice. Cronin v. Gay, 20 Texas, 460; Cargill v. Kountze Bros., 86 Texas, 386. The argument that the examination may be ordered as upon a bill of discovery is fully met by the fact that we have no such proceeding.

The common law proceeding most analogous to physical examination is the right of view, by which a party sought to have his witnesses examine the premises to qualify them to testify. "There are but two such cases reported in the English Reports. Newman v. Tate, 1 Arnold, 244, and Turquand v. Strand Union, 8 Dowling, 201." The request was refused in both cases. Railway Co. v. Botsford. It is significant that the Legislature of this State after adopting the common law of England, within a short time after those cases were decided, repealed the right of view by this article, 1451, Revised Statutes: "All vouchers, views, essoins, and also trials by wager of battle and wager of law, shall stand repealed." Thus we see that the Legislature has not only failed to provide for a physical examination of parties, but has actually repealed from the common law in this State the only proceeding that bore the slightest resemblance to it.

The claim that the duty rests upon each court to administer exact justice between parties is not supported by any authority, nor is it consistent with the general law of this State, nor with the common law upon these questions. It is the province of a court to try issues formed by the pleadings of parties according to the rules of procedure, to furnish all process authorized by law to secure evidence, and to administer justice according to the evidence adduced on the trial. The common law and our statutes provide all of the means which courts are authorized to use in the administration of justice between parties, and no court has authority to originate and introduce a new process to enable parties to secure evidence in support of their cases. A court with power "to make subservient to its order all persons and things that will afford the most reliable evidence" would be an anomaly in consti-

tutional republican government. It is better for the common good, that courts should be restrained within prescribed limits, than that judges be invested with unlimited and irresponsible power over the persons and property of the citizen.

In this State by our Constitution and the common law the person of a citizen is so sacred that an officer may not disregard the right of personal freedom, even to satisfy an execution by levying upon property which is on the person of the defendant. To show the fallacy of the claim made by those that uphold the right of physical examination, we will suppose A has instituted a proceeding against B for damages on account of personal injuries inflicted by B upon the plaintiff, and the defendant asks that a committee be appointed to examine the plaintiff as to his injuries, that witnesses may be furnished to testify of his condition. The court, in order "to administer exact justice," orders the examination, takes forcible control of the person of plaintiff, and makes an examination, produces evidence, and at the trial a judgment is rendered in favor of the plaintiff against the defendant for damages. When execution issues the officer calls upon the defendant for satisfaction; but with a valuable diamond in his shirt front and ten thousand dollars in his pocket, the defendant defies the officer to make a levy. The court would have made the person of the plaintiff "subservient to its order" to enable defendant to have an examination of plaintiff's person and to use the private parts of it as evidence, but would, if called upon, enjoin the invasion of the person of defendant to satisfy its judgment—this would be the practical working of the doctrine contended for. Many illustrations might be given of court proceedings which would show the fallacy of the claim that courts in Texas have power to order a person to submit his or her person to examination in civil suits; but we feel it is unnecessary. It is sufficient to say, for the courts of Texas, that the authority to order such an examination and force a party to submit to it is found neither in common law nor in the statute laws of this State, and, therefore, does not exist and can not be exercised by the courts of Texas.

The plaintiff in error contends that new conditions have arisen in connection with this class of litigation, which make it necessary for the courts to adopt this method so as to enable the defendants to secure necessary evidence. In support of this contention, counsel for the plaintiff in error has injected into his argument matter which is wholly irrelevant in this court, and might be more appropriately addressed to the Legislature. We can not better express our views upon this matter. than to quote from the opinion of Chief Justice Holmes of the Supreme Court of Massachusetts, in the case of Stack v. Railroad Company, 177 Mass., 158: "We appreciate the ease with which, if we were careless or ignorant of precedent, we might deem it enlightened to assume that power. We do not forget the continuous process of developing the law that goes on through the courts, in the form of deduction, or deny that in a clear case it might be possible even to break away from a line of

decisions in favor of some rule generally admitted to be based upon a deeper insight into the present wants of society. But the improvements made by the courts are made; almost invariably, by very slow degrees and by very short steps. Their general duty is not to change but to work out the principles already sanctioned by the practice of the past. No one supposes that a judge is at liberty to decide with sole reference even to his strongest convictions of policy and right. His duty in general is to develop the principles which he finds, with such consistency as he may be able to attain."

It may be true that evil practices by plaintiffs in these cases have grown up; but it is equally true, that to establish such a rule of practice would place in the power of defendants in damage cases the means of annoying plaintiffs, and of intimidating the most worthy of the complainants in such suits.

At the trial of the cause, after the testimony of physicians who had treated Cluck for his injuries had been introduced, and Cluck had, himself, testified as to his injuries and the circumstances under which he received them, the attorney for the railroad company propounded to him this question: "Are you willing, in the presence of some reputable person, or by yourself, and subsequently to be supported by your affidavit that it is urine voided by you into a vessel which is absolutely free from any foreign matter, to furnish a specimen of your urine, voided under the circumstance stated, to a committee of competent physicians to be appointed by the court, so that an analysis of that urine may be made?" To which counsel for plaintiff objected on the ground that same was irrelevant and immaterial and a useless consumption of time, which objection was by the court sustained. The same objections apply to this procedure as to that which sought a physical examination of the plaintiff. The court could not enforce such an order without taking possession of the person of plaintiff and exercising coercive power to compel him to perform the act. For the reasons before given, we hold that the objection was properly sustained.

The plaintiff, Cluck, being on the stand as a witness in his own behalf, and having testified of his injuries and their effect, the railroad company propounded to him the following question: "I will ask you whether or not a proposition has been made to you to have the court, without the suggestion of counsel for defendants, appoint a committee or board of skilled physicians to examine you physically with a view of ascertaining the nature and extent of the ailments of which you complain and their cause?" To this question counsel for plaintiff objected on the ground "that the same was incompetent, irrelevant and immaterial, and that the purpose of it was to prejudice the plaintiff's case before the jury; that the matter had already been ruled upon by the court, and could not again be inquired into; and that the right to decline to submit himself to a physical examination by physicians to be appointed by the court was a legal right." The objections were sustained by the court. In this ruling the court erred. The reason for

refusing a physical examination of the plaintiff is not that the defendant is not entitled to have the benefit of the evidence, but because the court has no power to force the plaintiff to submit to such an examination. He has the right to submit, or refuse, but in case he should refuse the defendant is entitled to have that fact go to the jury to be considered by them in determining upon the credibility and sufficiency of the testimony upon which he seeks to recover. Railway v. Botsford, 141 U. S., 255. If the jury should believe that the refusal showed a purpose to conceal the truth, they might take the fact into account in weighing the evidence. If a satisfactory reason should be given for the refusal, and other evidence were sufficient, the refusal would not defeat a recovery. The suggestion that the court might enforce its order by refusing to submit the case to a jury is not sound, for in this State a party is entitled to a trial by jury whenever he produces evidence which shows prima facie a right to recover. In case of unreasonable refusal to allow examination, the court could and should set aside the verdict, unless the evidence satisfactorily established the right.

It is claimed by the defendant in error that these matters occurred in the presence of the jury, who were fully informed as to the plaintiff's refusal. That is true, but the action of the court had the effect to take it from the jury, which would neutralize any effect that the occurrence, in the presence of the jury, might have had upon their minds. It was equivalent to telling the jury that it was not to be considered by them. The defendant in error would get no benefit from the fact that the question was asked and objected to in their presence by the plaintiff's counsel.

For the error indicated, the judgments of the District Court and of the Court of Civil Appeals are reversed and the cause is remanded.

*Reversed and remanded.*