## CARTER v. LINDEMAN et ux.

### No. 1722.

Court of Civil Appeals of Texas. Eastland.

Dec. 3, 1937.

Sullivan & Marmaduke, · of Duncan, Okl., and W. H. Penix, of Mineral Wells, for appellant.

Bouldin & Bouldin, of Mineral Wells, for appellees.

LESLIE, Chief Justice.

This suit was instituted in the district court of Palo Pinto county by A. J. Lindeman and his wife, Lula Lindeman, against Carl Carter, a resident of the State of Oklahoma, to recover damages alleged to have been occasioned by injuries received in a collision of the plaintiffs' car with one driven by the defendant. Different grounds of negligence are alleged. Besides pleas to the jurisdiction, there were demurrers, general and special denials, etc. The trial was before the court and jury. Upon the answer of the latter to special issues judgment was rendered in favor of the plaintiffs. The defendant appeals.

The first assignment is that the court erred in overruling the defendant's motion to quash service of process. Essentially the motion is an attack upon the constitutionality of Senate Bill No. 116, chapter 125, P. 279, Acts 41st Legislature of Texas, and the amendment thereof in chapter 70, Senate Bill No. 172, Acts 43d Legislature of Texas, p. 145. These laws are to be found in Vernon's 1936 Civil Statutes, art. 2039a. The sufficiency of the service is questioned under the provisions of article 2039a, (Acts 43d Leg., c. 70), providing for notice to nonresidents sued in this state for injuries resulting from car collisions while such nonresidents are using the public highways of Texas. The contention made is that the title or enacting clause of said bills do not sufficiently reflect the subject matter of the bills.

We find it unnecessary to pass upon this constitutional question. The appellant appeared in the trial court in person and by attorney. He pleaded to the jurisdiction of the court, filed an answer containing a special and general exceptions, general denial and special answer to the merits and tried the case. This removes any question of the sufficiency of service of process. Further, there can be

320

no special appearances in cases in the courts in Texas. Waco Hilton Hotel Co. v. Waco Dev. Co. (Tex.Civ.App.) 75 S. W.2d 968, 971; Osvald v. Williams (Tex. Civ.App.) 187 S.W. 1001; Wright v. Jones (Tex.Civ.App.) 33 S.W.2d 292; 4 Tex.Jur. 616, 617, and 618; Id. p. 651, § 27.

We overrule the assignments complaining of the action of the trial court in overruling general and special exceptions. They are numerous and it is unnecessary to discuss them.

■ The sixth assignment is to the ruling of the court in refusing to let witness Pemberton give an opinion in answer to the following question: " * * * from what you saw, from the position of the cars and direction each one of them was going and from what you saw after the cars stopped of [after] this collision, what would you say or who would you say was at fault or to blame for the collision?"

There is no merit in such a contention. A jury question was involved.

Assignments 7 and 8 complain of rulings by the court in excluding like testimony offered through other witnesses. No error is shown.

■ The appellees except to the sufficiency of assignments 48, 49, 50, and 51, and object to their consideration.

The ground of objection is that the bills of exception preserving the respective points do not state that the argument complained of was not "justified by the evidence, nor do they show that they were not in reply to argument made by the defendant's counsel." In West Texas Utilities Co. et al. v. Renner (Tex.Civ.App.) 32 S.W.2d 264, this contention was sustained, but when that case reached the Supreme Court (53 S.W.2d 451, 455) it was held that: "A bill of exceptions to improper argument is not required to negative any possible fact or state of attending circumstances that would render the objectionable matter without prejudicial effect." We therefore overrule this objection.

■ The forty-eighth and forty-ninth assignments will be considered together. The forty-eighth is directed to that portion of the closing argument to the jury by appellees' counsel wherein he states, in discussing the testimony of an important witness offered by the appellees: "I have known Joseph Walker, first witness for plaintiff, many years, and if you had known him as well as I do you would know that he was doing his best to tell the truth. He is a truthful and upright young man and he told the truth in this case as far as he knew it and I know he told the truth." To this bill the court attached the "explanation" that when the remarks were made he instructed the jury not to consider the same and admonished the counsel to refrain from using similar language concerning other witnesses.

The forty-ninth assignment is addressed to other statements of appellees' counsel in his closing argument to the jury. The litigants failing to agree upon a bill reflecting the argument, the court prepared one stating therein with reference to the objectionable matters: "Mr. Sullivan, attorney for defendant, stated to you that he had known Mr. Carl Carter, defendant, for many years and that he knew him to be an honest man and that if you knew him as he knew him, you would believe that he had testified to. * * * I want to tell you that I know this country girl, Mrs. Fowler, and know she was telling the God Almighty truth, and if you knew her like I know her, you too would believe she was telling the truth."

It is unnecessary to go into detail, but these and other witnesses testified upon material and controverted issues giving different accounts of the circumstances attending the collision. Various objections were timely urged to the argument, among them, that they were unsworn statements of the attorney offered upon the merits of the case and were unfair and unlawful attempts to bolster up the testimony of said witnesses. The last bill also discloses that the trial court added thereto the "explanation" that when the appellees' counsel made the remark he instructed the jury it "was not evidence in the case and that they should not consider same."

The appellees justify the use of the language challenged by assignments 48 and 49 on the ground that such argument was provoked by the attorney for the appellant, who, according to the bill supporting assignment 49, first stated in his argument to the jury with reference to the defendant (his client) the following: "That he had known Mr. Carl Carter for many years and that he knew him to be an honest man and that if you knew him

as he knew him you would believe that he had testified to." Upon the theory that this argument by appellant was a departure from the record to improperly discuss the veracity of a witness, the appellees contend that their attorney merely left the record in response to said argument and rightfully replied as he did.

We believe a like question was considered by this court in Sanders v. Lowrimore, 73 S.W.2d 148, wherein we held that the argument of counsel for defendant as to ability of his client to pay judgment did not justify argument of plaintiff's counsel (in an action for injuries) calling attention to the plaintiff's poverty. When the case reached the Supreme Court (103 S.W.2d 739), it held that: "Defendants whose counsel improperly argued defendants' poverty could not complain that plaintiffs' counsel thereafter improperly argued plaintiffs' poverty." It is said in that opinion: "The arguments are related one to the other, and are of the same nature. According to this bill, counsel for defendant first inflicted upon the plaintiff the same identical wrong which she now complains of as an injury to herself. Having brought about the situation which provoked the language complained of, she is in no position to ask for relief."

If, as stated by the Supreme Court in the Lowrimore Case, the arguments are related one to the other and are of the same nature, it is because the arguments pertained to the poverty of the opposing litigants. In the instant case if it can be said that the arguments of the different attorneys relate "one to the other, and are of the same nature," it is because the argument of each attorney related to the *improper bolstering up of the veracity of respective witnesses*—in brief, veracity. The analogy between the Lowrimore Case and this one is obvious. There "poverty" was discussed. Here veracity of witnesses. If such argument is permissible in the first instance, it would appear to be so in the latter. There is a difference in the two cases. The Lowrimore Case involved but a single individual on each side of the litigation, whereas, in this case the attorney for the appellees came to the rescue of two witnesses in matters of veracity. However, if the principle has application under such circumstances it would appear that under provocation an attorney may depart from the record and vouch for the veracity of any number or all of his witnesses, without committing reversible error. That is, the party first departing from the record would be estopped to complain that the other did so in reply. Applying the rule laid down in the Lowrimore Case, 103 S.W.2d 739, to the facts of the instant one, we are of the opinion that assignments 48 and 49 should be overruled and that the objectionable argument be held to have been provoked by improper argument of like nature on the part of the attorney for plaintiffs.

Assignment 50 is directed to another portion of the closing argument of appellees' attorney. The plaintiffs put Dr. Patterson upon the stand as witness to testify concerning the injuries sustained by plaintiff's wife in the collision. Dr. Patterson was a material witness, going extensively into the nature of the injuries sustained, their effect on the plaintiff's wife up to that time, and their probable effect in the future. According to his testimony the injuries were of a serious and permanent nature. The attorney for the defendant, in discussing the facts and circumstances in evidence, announced his deduction "that he did not believe his (doctor's) testimony and he did not see how this jury could believe this testimony."

In the appellees' closing argument said attorney, referring to the doctor's testimony, stated to the jury: "There are many good doctors in Palo Pinto County and if the plaintiff had not been injured as she claimed the defendant had the legal right to have her examined by some of those doctors in order to determine whether or not she was injured as she claimed" and further stated in that connection "that I have the right to tell you what the defendant could do in the matter."

This argument was objected to as "highly prejudicial and damaging" to the defendant for various reasons, some of them being that counsel in making same was invading the province of the court and telling the jury the law applicable to the case; that no such law had been submitted by the court to the jury for its guidance and consideration; that it purported to be a statement of a fact by the counsel, whereas no witness had testified to it, and neither had the court alluded to same as a statement or proposition of law.

In allowing this bill, the court made explanations to the effect that at the time the argument was made he instructed the coun-

sel to desist from making such remarks and instructed the jury not to consider same. In addition to such explanation the court also states that: "The argument complained of was in answer to argument advanced by Mr. Sullivan, one of the attorneys for defendant, wherein he stated in substance in discussing the evidence of Dr. Patterson, one of the witnesses for plaintiff, that he did not believe his testimony and he did not see how this jury could believe such testimony."

It is unnecessary to consider all the different objections timely made and urged to this argument. They raise different questions. The most serious one is that directed to the statement of the appellees' counsel to the jury that, "The defendant had the legal right to have her [plaintiff] examined by some of those doctors in order to determine whether or not she was injured as she claimed," and as was testified to by Dr. Patterson.

As we interpret the record, inclusive of the trial court's explanation, there was nothing to provoke this particular phase of the argument. It cannot be disposed of as argument in reply to improper argument indulged in by the adversary. The right to analyze and question Dr. Patterson's testimony and point out the inaccuracies and fallacies therein, if any, could not be denied the attorney for defendant. The attorney's statement to the jury that the defendant had the right to have the plaintiff examined by other doctors should not be regarded as provoked or warranted by improper argument of the same nature. We find in the record no justification for this statement, and it is not in accord with the opinion of our Supreme Court in Austin & N. W. Ry. Co. v. Cluck, 97 Tex. 172, 77 S.W. 403, 64 L. R.A. 494, 104 Am.St.Rep. 863, 1 Ann.Cas. 261, wherein it was held that a district court could not, in the absence of express legislative authority, direct the plaintiff in an action to recover for personal injuries to submit to an examination of the person. We understand that to be a correct statement of the law, and that it has been uniformly followed in this state for many years.

The damaging nature of the argument here complained of is obvious. As stated, Dr. Patterson had testified extensively concerning the injuries, pronouncing them serious in nature and permanent in duration. In that situation said remarks by an attorney of recognized legal ability and integrity would certainly tend, if it did not compel the average juror to give undue effect to the testimony of the doctor. There is a double aspect to the injury arising from this argument. Besides being an incorrect statement of the law and injurious in itself, it was, as stated, calculated to cause the jury to give undue effect to the plaintiff's testimony. That is, if the ascertainment of the truth concerning the plaintiff's injuries was so simple a matter as calling in good doctors to examine plaintiff, and no steps had been taken to do so, although the law provided compulsory process for doing same (according to the argument), it could hardly be expected that the jury would hesitate to give full or undue credence to the testimony of Dr. Patterson supported with this character of argument. If we properly interpret the decision of our Supreme Court in the Cluck Case, there is nothing in this record warranting the attorney's discussion and statement of the law here complained of. The argument was certainly material, calculated to produce prejudicial effect, and it is not shown by this record to be harmless beyond reasonable doubt. In such case a reversal of the judgment of the trial court necessarily must follow. Bell v. Blackwell (Tex. Com.App.) 283 S.W. 765; Robbins v. Wynne (Tex.Com.App.) 44 S.W.2d 946; Brown Cracker & Candy Co. v. Castle (Tex.Civ.App.) 26 S.W.2d 435; Williams v. Rodocker (Tex.Civ.App.) 84 S.W.2d 556, 563.

█ As said in the last authority cited, the argument "was of a nature that it could not be rendered immaterial by objection and an instruction by the court to the jury not to consider it. Being material, it must be presumed that its effect was prejudicial There is wholly wanting any fact, or combination of facts and circumstances which affirmatively show beyond a reasonable doubt that it had no prejudicial effect."

█ The same considerations prompt us in sustaining following propositions.

The fifty-first assignment raises a somewhat similar question to that just disposed of. It is also addressed to certain features of the closing argument of the appellees' counsel. It is self-explanatory. The objectionable argument is: "Gentlemen of the Jury: I have heard of the chimney corner law for a long time, that

a car driving along the road on the right has the right of way over a car coming from the left, but I have never seen that law and I want to state to you gentlemen of the jury that same is not the law and that the car coming from the left has as much right to the road as a car coming on the right."

The bill of exception presenting this argument and appellant's objections thereto also carries an explanation by the court that he "instructed the jury to pay no attention to said remarks * * *," and that he ordered counsel "to desist" from making such. The statement was objected to as "contrary to law," prejudicial, damaging, etc.

Upon this point, which relates to the law of the road, we find subdivision (E), art. 801, Penal Code 1925, to be as follows: "Except where controlled by such ordinances or regulations enacted by local authorities, as are permitted under the law, the operator of a vehicle approaching an intersection on the public highway shall yield the right-of-way to a vehicle approaching such intersection from the right of such first named vehicle."

The possible relevancy of this provision of the statute under the facts of the instant case is manifested when it is borne in mind that the collision in question happened at the crossing of the Weatherford-Graham highway with paved road 66 from Mineral Wells to Wichita Falls. The plaintiffs were approaching the crossing from the east, and to their right the defendant (coming from the north) was approaching said crossing on road 66. In the light of such facts, necessarily reflected by the testimony, the argument under consideration was made. It is hardly necessary to inquire into the materiality of such an argument, for, we think, we may proceed upon the theory that it must have been material; that is, beneficial to the appellees and detrimental to the appellant on issues before the jury, or such argument would not have been made. Since appellees and appellant were approaching the crossing at the same time such provision of the statute would possibly have application, and in all probability a material bearing on the issues of the case. Issues of primary negligence and contributory negligence were closely drawn and the argument objected to doubtless had a direct bearing upon the duty of those approaching the crossing.

As held in South Texas Coaches v. Eastland (Tex.Civ.App.) 101 S.W.2d 878, 881, it is the statutory duty of one to observe this provision of the law. It is there held under similar circumstances that: "It was the duty of the bus driver, approaching the intersection in question, to have yielded the right of way to Mr. Eastland, who was approaching the intersection from the right of the bus; * * * and the failure of the driver to comply with either statutory requirement was negligence per se."

This argument relative to said law of the road being substantially at variance with the article of the Code set out above, as well as the interpretation thereof to be found in the opinion just cited, it must be held that the argument was material and calculated to be prejudicial in its effect. Further, the record does not show it to have been harmless. Authorities supra.

Although the trial court frequently admonished the attorney to refrain from the character of argument under consideration, directions appear not to have been observed, and we do not believe that the instructions so given, under the circumstances of this case, were calculated to render the argument immaterial, or remove the harmful effects of the same. Williams v. Rodocker, supra; Hewitt v. Buchanan (Tex.Civ.App.) 4 S.W.2d 169.

■ The thirty-ninth assignment of error complains of a communication between the jury and the court, in the absence of appellant's attorneys. While considering its verdict, the jury came into open court and handed the judge the following written communication:

"To the Court:

"Please advise if the words immediately prior contained in your charge in special issue No. 1 means before any attempt was made by the defendant Carter to stop his car at the 89 foot point from the collision, or does it mean after the brakes of his car were applied?

"J. M. Denson, Foreman."

The court replied in writing, as follows:

"I suggest that you make your findings as to this issue first as to the time the brakes were first applied and second as to the time the collision actually occurred. The form of your answer should be As to the time the brakes were first applied ————, and as to the time of the actual collision ————."

324

Acting upon these instructions, the jury answered issue No. 1 as follows: "As to the time the brakes were first applied yes, as to the time of the actual collision no."

The appellant did not know of this communication until after the verdict. Thereupon he at once interposed various objections to the procedure and later raised the question in a motion for new trial. The court's explanation of the matter is: "The attorneys for both parties were not at Palo Pinto, but were at Mineral Wells and could not be present to advise the court without much delay." Efforts to communicate with the attorneys, if any, are not disclosed.

The above direction or instruction given by the court to the jury is not a special issue, and neither is it a definition or explanation of a legal term in the statutory sense. Article 2189, R.S.1925. It partakes of the nature of a general charge not authorized where a case is submitted upon special issues. It made a material alteration in the submission of issue No. 1, in that it authorized two answers, whereas said issue as first submitted called for only one. The subsequent instruction and the original issue clearly contradict each other. This instruction authorizing two answers to issue No. 1 in a sense destroys the integrity of other issues. According to the original submission, the jury's right to answer issue 2 at all was predicated upon a "yes" answer to issue No. 1, but as subsequently instructed, the jury gave a "yes and no" answer to that issue. Further the idea expressed by the words "immediately prior" is in substance carried into succeeding issues 2, 3, 4, and 5; the expression there used being "immediately preceding" the accident.

In authorizing two answers to the issue, the burden was cast upon the defendant to refute the charge that he was driving in excess of 45 miles per hour, first on his approach to a point 89 feet from the intersection of the roads, or place of the accident, and, second, that he was not driving at such speed at the time of the collision. Hence, it would appear that there is some substance to the appellant's contention that the additional instructions placed a greater burden upon him than the original issue which he had discussed with the jury.

Since an "89-foot point" was taken as a material basis by the jury and court for the jury's question, and the court's response thereto, it would appear that the instructions given were on the weight of the testimony, giving particular credence to a circumstance testified to by the plaintiff. While on the stand he testified that the defendant's automobile "skidded on the pavement" at a point 89 feet from the crossing or place of accident, indicating application of brakes, etc., at that distance.

Our statutes specifically provide for methods of communication by a court and jury in the trial of a case, but considering all the circumstances and necessary implications arising from the results of the communication of the jury with the court in the instant case, we are of the opinion that prejudicial error was committed. Certainly there is a reasonable doubt as to the harmful effect of the same. Bell v. Blackwell, supra.

Other assignments suggest possible errors therein complained of, but the conclusions we have reached render some of them immaterial, and others will doubtless not occur upon another trial.

For the reasons assigned, the judgment of the trial court is reversed and the cause remanded.