SOUTHWESTERN SURETY INS. CO. v. CURTIS et al. (No. 5964.)

(Court of Civil Appeals of Texas. San Antonio. Feb. 6, 1918. Rehearing Denied Feb. 27, 1918.)

1. TRIAL ⊚⟹352(1)—SPECIAL ISSUES—FORM—QUESTIONS OF LAW.

The special issue, did employer have "in force" employers' liability insurance with defendant? clearly submitted question of fact as to whether insurance contract had been canceled before date of injury; the quoted words not presenting a question of law.

2. TRIAL ⊚⟹252(12) — ISSUES — SUPPORT BY SECONDARY EVIDENCE.

Where the existence of a contract sued on was sufficiently proved by secondary evidence and defendant's admissions, it was not error to submit issues as to whether the contract had been canceled, although the contract, which was in possession of defendant, had not been introduced.

3. MASTER AND SERVANT ⊚⟹276(1)—EMPLOYERS' LIABILITY INSURANCE—EVIDENCE.

Evidence held to justify finding that, at the time intestate was injured, his employer had a contract with defendant, obligating defendant to pay in accordance with Employers' Liability Act.

4. MASTER AND SERVANT ⊚⟹375(1) — WORKMEN'S COMPENSATION—COURSE OF EMPLOYMENT.

Where intestate was injured while working on employer's barn, under its orders and control and for its benefit, he was injured in the course of his employment.

5. MASTER AND SERVANT ⊚⟹383—WORKMEN'S COMPENSATION INSURANCE—LIABILITY—NOTICE.

Defendant's liability to pay compensation under its contract of employers' liability insurance did not depend upon notice of the contract by defendant to the Industrial Accident Board prior to the injury.

6. MASTER AND SERVANT ⊚⟹383—WORKMEN'S COMPENSATION INSURANCE — NOTICE OF INJURY.

It was immaterial when the employer notified the Industrial Accident Board of its insurance contract with defendant; the only notice required being notice of employé's injury within a reasonable time to defendant and the board.

7. MASTER AND SERVANT ⊚⟹414—INDUSTRIAL BOARD—JURISDICTION.

The jurisdiction of the Industrial Accident Board to adjust a claim against an employers' liability insurer attaches as soon as claim for compensation for injuries to employé is filed.

8. MASTER AND SERVANT ⊚⟹416 — FINAL AWARD OF INDUSTRIAL ACCIDENT BOARD.

A final award of the Industrial Accident Board would bind all parties before it, unless prior to such award the insurer manifested its objection to the adjustment and its refusal to abide by the final decision of the board; an objection and refusal, timely made, depriving board of right to proceed further.

9. MASTER AND SERVANT ⊚⟹414—INDUSTRIAL ACCIDENT BOARD—JURISDICTION—CONSENT OF PARTIES.

Where the employer expressed its consent by becoming a subscriber to the employers' insurance association, the insurer obtained its license and permit and issued the policy, and claimant filed claim for compensation, there was consent of all parties interested, required to give Accident Board jurisdiction.

10. MASTER AND SERVANT ⊚⟹411 — WORKMEN'S COMPENSATION ACT—SUIT ON AWARD —EXTENT OF RELIEF.

Where the Industrial Accident Board, under the Employers' Liability Act, awarded to plaintiff widow a weekly allowance, and on default in payment of such allowance she sued the insurer, the court, though it properly gave judgment establishing the validity of the award, should not have given judgment and execution for installments which had not accrued.

Appeal from District Court, Bexar County; S. G. Tayloe, Judge.

Suit by Mary M. Curtis and others against the Southwestern Surety Insurance Company. Judgment for plaintiffs, and defendant appeals. Reformed and affirmed.

Hertzberg, Kercheville & Thomson, of San Antonio, for appellant. Ryan & Matlock, of San Antonio, for appellees.

SWEARINGEN, J. Appellee Mary M. Curtis, for herself and for the use and benefit of her two minor sons, Lurean and David Pettyjohn, instituted this suit against the appellant, Southwestern Surety Insurance Company, to recover compensation for the death of Edward H. Pettyjohn, her husband, and the father of the two minors. T. B. Curtis,

husband of Mary M. Curtis, joined his wife in the suit pro forma. Special issues were submitted to a jury, and judgment rendered against appellant for $1,489.40, the amount of the matured installments, together with interest from the date of the judgment, and for $2,386.50, payable in weekly installments of $10.50 each, the first weekly installment to be paid on the 2d day of June, 1917, and one installment each and every week thereafter until the full sum of $2,386.50 shall have been paid.

It is alleged that Edward H. Pettyjohn, on and prior to November 8, 1914, was in the employ of the Russell-Coleman Cotton Oil Company; that he received a salary of $100 a month, paid as follows: $75 a month paid in cash, and the balance paid by the use of a dwelling furnished by the Oil Company, which was of the reasonable value of $25 a month. It is alleged that Pettyjohn, while in the general course of his employment, and working for said Russell-Coleman Cotton Oil Company under its instructions and for its benefit, was injured by stepping on a nail projecting from a board lying on the ground on the premises of said employer company, that the nail penetrated Pettyjohn's foot, inflicting serious injury; which injury caused blood poison and tetanus, resulting in the death of Pettyjohn on the 16th day of November, 1914. It is further alleged that the Russell-Coleman Cotton Oil Company was a subscriber to the Texas Employers' Insurance Association at the time of the injury, and that on the day of the injury and prior thereto the appellant insurance company had obligated and bound itself to pay to the employés of the Russell-Coleman Cotton Oil Company, or to the representatives and beneficiaries of such employés, such damages or compensation as should be awarded against it by the Industrial Accident Board of the state of Texas on account of personal injuries or death sustained by the said employés while in the course of employment; that said appellant company received a license and permit from the commissioner of insurance and banking of the state of Texas to issue policies of insurance under said Employers' Liability Law. It was also alleged that the accident and injury to Pettyjohn was reported by the subscriber, Russell-Coleman Cotton Oil Company, to the Industrial Accident Board at Austin, Tex., on November 25, 1914, within a reasonable time after the death of Pettyjohn, and that the accident and injury were duly reported to the appellant insurance company. It was further alleged that within six months after the death of Pettyjohn, namely, on December 2, 1914, claim was filed by the widow, Mary M. Curtis with the Industrial Accident Board, for the compensation due from the appellant company; that appellant company was duly notified of the claim; that thereafter, on the 26th day of August, 1915, the Industrial Accident Board entered an order by which it ordered, adjudged, and decreed that the appellant, Southwestern Surety Insurance Company, should pay to appellee Mrs. M. Pettyjohn, now Mary M. Curtis, the sum of $10.50 a week, payable weekly for 360 weeks from and after November 8, 1914, but that, notwithstanding said order of the Industrial Accident Board, the appellant refused to pay said award.

Appellant answered by general denial, and specially denied that the Russell-Coleman Cotton Oil Company had a liability policy obligating the appellant company to pay compensation to the oil company's employés at the time of the injury to Pettyjohn on November 8, 1914, and denied that Pettyjohn was injured while in the course of his employment. Appellant denied the authority of the Industrial Accident Board to make the award against it, because the award was made without notice to the appellant, and because its policy insuring the Russell-Coleman Cotton Oil Company did not cover the injury to Pettyjohn. Appellant denied that it consented to abide by the decision of the said Industrial Accident Board.

There was evidence to sustain the material facts pleaded by appellee.

[1] The first assignment presents objections to the first special issue, which, in effect, was: Did Russell-Coleman Cotton Oil Company, on November 8, 1914, have in force employers' liability insurance with appellant?

The first proposition finds fault with the expression, "in force," claiming that those words present a question of law. Those words were used in the light of appellant's pleading and testimony. Appellant admitted in its answer that it had issued a policy of employers' liability insurance to the Russell-Coleman Cotton Oil Company, and that the policy had not been canceled at the time of the injury to Pettyjohn, but alleged that the policy covered Russell-Coleman Cotton Oil Company only as a general contractor in the construction and erection of said cotton oil mill; that is, in the construction and erection of its machinery and buildings, and that Pettyjohn was not employed in connection with the construction of said cotton oil mill, but was the night superintendent in the operation of the mill.

The tenor of appellant's testimony (the testimony varies from appellant's plea) was that the policy had been canceled and released at the time of the injury. No effort was made by appellant to prove that the terms of the contract were as pleaded by it. The issue made by this testimony was: Had the insurance contract been canceled and released on November 8, 1914? The question could have been put in that form; but the issue was framed from appellees' point of view, that the contract was in force on that date, meaning that the contract had not been released or canceled. We think the

words clearly submitted the question of fact to be found by the jury.

[2] The second proposition made under this first assignment is that the contract itself was not introduced in evidence, and therefore it was error to ask the jury whether it had been released or canceled on November 8, 1914. We think the existence of a contract, and the terms or obligations of the contract to pay the compensation sued for, were sufficiently proven by secondary evidence, and appellant's admissions, to make it the duty of the court to submit the issue as it did. Appellant admitted in its answer, as above mentioned, that it did deliver to Russell-Coleman Cotton Oil Company an employers' liability insurance contract prior to the injury. The appellant insurance company made the following written report to the Industrial Accident Board:

"Russell-Coleman Cotton Oil Co., San Antonio, Texas.

"As required by rule 5, this will give you notice that compensation policy has been issued covering operations of the above subscriber as indicated below.
"[Signed] Southwestern Surety Insurance Co.,
                              "By E. C. S.
"Policy No. C–25809.
"Date of policy, 9/25/14–9/25/15.
"Date canceled, ———.
"Number of employés, 25.
"Business, Cotton seed oil mfrs., etc."

Without objection, the statement of the chairman of the Industrial Accident Board of the state of Texas was admitted, which proved that the Russell-Coleman Cotton Oil Company had a policy of insurance in the Southwestern Surety Insurance Company, Denison, Tex., on the 8th day of November, 1914. Appellant's witness testified that the policy at the time of the trial was at the home office of the appellant insurance company. Without objection, and without contradiction by appellant, appellee introduced the report of the injury to Pettyjohn, filed with the Industrial Accident Board by the Russell-Coleman Cotton Oil Company. The report contained the following:

"1. Are you insured to provide payment to injured employés under the Employers' Liability Act? Yes.
"2. If so insured, give name and business address of the insurance association or company. Southwestern Surety Insurance Company, Denison, Texas.
"Name of injured employé. Ed Pettyjohn."

[3] This testimony, in the absence of explanation or better evidence, which was in the possession of appellant, justifies the finding that at the time Pettyjohn was injured the oil company had a contract with the appellant, and that the contract by its terms provided that appellant would pay Pettyjohn in accordance with the Employers' Liability Act. The court did not err, either in submitting the issue or in the expression thereof. The first assignment is overruled.

The eighteenth and nineteenth assignments present the same objections as the first, and both are overruled.

The second assignment is also overruled, inasmuch as it is a corollary of the propositions presented by appellant under the first assignment.

[4] The complaint of the third and seventeenth assignments is that the evidence established without contradiction that Pettyjohn was not injured in the course of his employment; the contention being that Pettyjohn was employed as night superintendent of the mill, whereas he was injured while building a barn that belonged to the employer, but which was to be used by Pettyjohn. The third and seventeenth assignments are overruled, because there was testimony that Pettyjohn was working on the oil company's barn under the orders and control of the oil company and for its benefit. Southern Surety Co. v. Stubbs, 199 S. W. 343.

The fourth assignment is also overruled, because it presents a proposition that is a corollary to the proposition discussed in the third assignment, and logically falls with it.

[5] The fifth and sixth assignments present a question that has no bearing upon appellant's liability in this suit. The obligation of appellant was made by virtue of the issuance of the contract of employers' liability insurance, which the appellant notified the Industrial Accident Board was effective from September 25, 1914, to September 25, 1915. The obligation to pay the compensation therein contracted did not depend upon the fact of notice of the contract by appellant to the Industrial Accident Board, and surely did not depend upon such notice being given prior to the injury. It was admitted by all parties that appellant was permitted and licensed by the proper authority to execute such a policy at the time, and that the oil company was a subscriber, within the terms of the Employers' Liability Act. The appellant company's consent to be bound was expressed by its written policy, for which it received a satisfactory premium. Both the fifth and sixth assignments are overruled.

[6] The seventh and eighth assignments are also overruled. It was immaterial when the oil company notified the Industrial Accident Board of its insurance contract with appellant. The only notice required under the facts of the present case was the notice to appellant and to the said board of the happening of the injury which notice was given within a reasonable time after the injury. The claim was filed with the board for compensation within six months after the accident. As before stated, the oil company was a subscriber; the appellant company was authorized to make such contracts as the one sued upon. The issuance of the contract, followed by the injury, created the liability, which was not lost by failure to give timely notice and make timely claim, according to the evidence before us.

The ninth assignment is overruled, for the reason that no error is presented of which appellant can complain. If there was error, as contended, the error was determined by the court in its decree in favor of appellant.

[7, 8] The tenth, eleventh, twelfth, thirteenth, fourteenth, and fifteenth assignments all predicate error upon the issue of whether or not the insurance company consented to the Industrial Accident Board proceeding toward the adjustment of appellee's claim for compensation, after the insurance company had been notified by the board that the claim was filed with it. The jury found in answer to the question that the insurance company did impliedly consent to have the board proceed to adjust the claim. As the law here involved is construed by Justice Levy, the jurisdiction of the board to adjust this claim attached as soon as the claim was filed with that board by appellee, and this jurisdiction would adhere, and the board's final award would bind all parties before it, unless, prior to the final award by the board, the insurance company manifested to the board its objection to the adjustment and its refusal to abide by the final ruling and decision of said board. Such an objection and refusal, timely made, would deprive the board of proceeding further. Fidelity & Casualty Co. v. House, 191 S. W. 155; Roach v. Texas Employers' Association, 195 S. W. 328. The evidence in this case shows notice to the insurance company by the board that it would proceed to adjust the claim. The testimony warranted the issue that the insurance company did not manifest its objection to the board's procedure to adjust the claim, and the testimony warranted the issue that the insurance company did not, before the final award, refuse to abide by the final decision of the board. Assignments 10, 11, 12, 13, 14, and 15 are overruled.

[9] The sixteenth assignment is overruled. The proposition is that the Accident Board's jurisdiction depends upon the consent of all parties interested; that is, the oil company, the insurance company, and the employé. The proposition is, of course, correct, and is clearly stated and discussed by Chief Justice Phillips in the case of Middleton v. Texas Power & Light Co., 185 S. W. 556. The facts of this case show that the oil company expressed its consent by becoming a subscriber, the appellant by obtaining its license and permit and issuing the policy, and the appellee herein by filing the claim for compensation.

[10] Appellant calls attention to a fundamental error in the judgment. The judgment establishes the validity of the award made by the Industrial Accident Board, and this we hold to be correct. The recovery awarded in this case must be limited to the relief plaintiff is entitled to as the beneficiary in a legal award made by such board. That relief entitles plaintiff to recover only such installments as had accrued at the date of the judgment. New York Life Ins. Co. v. English, 96 Tex. 268, 72 S. W. 58; Tex. Emp. Association v. Bryan, 198 S. W. 342. The court erred, under the authorities cited, in awarding a judgment and execution for installments which had not accrued at the date of the judgment, and the judgment is reformed by eliminating all of that portion thereof, which action is taken without prejudice to the right of the beneficiary or beneficiaries to sue for and recover such installments as they mature.

Reformed and affirmed.