U. S. FIDELITY & GUARANTY CO. v. DAVIS.   (No. 9061.)

(Court of Civil Appeals of Texas. Ft. Worth. March 22, 1919. Rehearing Denied April 26, 1919.)

1. MASTER AND SERVANT ☞391½, New, vol. 7A Key-No. Series—WORKMEN'S COMPENSATION ACT — ATTEMPTED REPUDIATION AND AFFIRMANCE OF AWARD.

An injured servant could not, under Workmen's Compensation Act, pt. 2, § 5 (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—44), repudiate and abrogate the ruling of the Industrial Accident Board awarding compensation, and at the same time treat it as effective and binding on the employer, and seek under section 5a to hold it liable for a lump sum settlement of his claim by reason of its failure to comply with the mandates of the board.

2. MASTER AND SERVANT ☞411—WORKMEN'S COMPENSATION ACT—PROVISION OF JUDGMENT FOR EXECUTIONS.

In a workmen's compensation case, the judgment should have provided for the issuance of executions to collect the various installments of compensation awarded as they matured, since clerk cannot be made the judge to determine what character of process he shall issue.

3. MASTER AND SERVANT ☞411—WORKMEN'S COMPENSATION ACT—FORM OF JUDGMENT.

In a workmen's compensation case, the form of judgment proposed by the servant, em-

bodying the right and power of the court to review it, and diminish, increase, or terminate the liability of the insurer in accordance with part 1, § 12d, of the Act (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—25), with the right in the insurer at any time to redeem its entire liability by payment of a lump sum on agreement with the servant, with the approval of the Industrial Accident Board, in accordance with part 1, § 15 (article 5246—33), *held* proper, with modification of provisions as to executions and the approval of the trial court of any lump sum settlement.

**4. MASTER AND SERVANT ⬅═408—WORKMEN'S COMPENSATION ACT—POWER OF COURT OVER AWARD—LUMP SUM SETTLEMENT.**

In view of Workmen's Compensation Act, pt. 2, § 5 (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—44), a court trying a workmen's compensation case by implication has the power given the Industrial Accident Board by part 1, § 15 (article 5246—33), to approve any agreed lump sum settlement, and the power given it by section 12d (article 5246—25) to review, terminate, diminish, or increase an award for compensation made.

**5. COURTS ⬅═26—ACQUISITION OF JURISDICTION—EFFECT.**

Where a court once acquires jurisdiction over a controversy, it retains such jurisdiction for all purposes necessary to a final determination of the rights of the parties.

**6. MASTER AND SERVANT ⬅═385(5)—WORKMEN'S COMPENSATION ACT—BASIS OF AWARD—AVERAGE WEEKLY WAGES.**

Where an injured servant had worked in the employment in which he was engaged when injured for several years before injury, under Workmen's Compensation Act, pt. 4, § 1, subsec. 1 (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—82), his average weekly wages, and not the average weekly wages of other persons similarly engaged, were the proper basis for determining the amount of compensation.

Appeal from District Court, Denton County; John Speer, Judge.

Proceedings for compensation under the Workmen's Compensation Act by W. W. Davis against the J. W. Thompson Construction Company, the employer, and the United States Fidelity & Guaranty Company, the insurer. Compensation was awarded, and the insurer appeals. Judgment reformed and affirmed.

Seay & Seay, of Dallas, for appellant.
Ed I. Key, of Denton, for appellee.

DUNKLIN, J. W. W. Davis was an employé of the J. W. Thompson Construction Company, which was a subscriber to the Workmen's Compensation Act, appearing in full in the acts of the Legislature of 1917, p. 269 (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91), and held a policy of insurance in the United States Fidelity &

Guaranty Company, issued according to the requirements of the act, and which made the insurer liable for compensation to the employés of the Thompson Construction Company for injuries sustained by them while engaged in such employment. On February 1, 1918, the Industrial Accident Board, with whom Davis had filed a claim for compensation, awarded him compensation to be paid by the insurer in the sum of $15 per week for the injury which the board found had totally incapacitated him for work, said weekly allowance to continue during the existence of such total incapacity, not to exceed, however, the period of 401 weeks, and subject to modification or termination in accordance with the provisions of the act.

Davis had attempted to procure an order allowing him compensation in a lump sum rather than in weekly installments in accordance with the provisions of section 15, pt. 1, p. 280, of the act, upon the plea that, as he had a wife and three small children to support, the oldest being only 12 years of age, and as he was wholly incapacitated to work himself, a manifest hardship and an injustice would be done him if his compensation was fixed at even the maximum weekly allowance authorized by the act. And when that request was refused he, within 20 days after that decision by the Industrial Accident Board, gave notice to the board and to the insurer that he would not abide by said ruling, and immediately instituted this suit to recover compensation under the act, as was his right to do under the provision of section 5, pt. 2, p. 283, of the act. In his petition, filed in this suit, he sought to recover compensation in a lump sum as he did before the Accident Board, and on the same grounds. In the alternative he prayed that, if he was not entitled to a lump sum settlement, then he should be awarded compensation in the sum of $15 per week for 389 weeks. Plaintiff further alleged that he had presented his claim to the Industrial Accident Board, and that said board had awarded him compensation which the defendant had refused to pay in accordance with the terms of that decision, although defendant was duly notified of plaintiff's dire distress and urgent need of such compensation for the support of his family.

In both counts of his petition plaintiff sought to recover exemplary damages in the sum of $4,000, as well as actual damages, which in each count was fixed at the sum of $6,000; the claim for exemplary damages being predicated upon an allegation of the construction company's "negligence and willful disregard for this plaintiff's rights in causing the said injuries."

It was further alleged that plaintiff has the right to a lump sum settlement by reason of the fact that the insurer had, without justifiable cause, failed to pay the weekly allow-

⬅═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

ances made by the Accident Board as they matured.

Judgment was rendered decreeing a recovery by the plaintiff of $22 per week for 265 weeks, after allowing the defendant credit for $180 which it had already paid prior to the trial under the ruling of the Industrial Accident Board. But one-third of the recovery was awarded to plaintiff's attorney for his services in prosecuting the suit. From that judgment the defendant has prosecuted this appeal.

The trial was before a jury, who returned a verdict, such as is indicated by the judgment, upon a general charge submitted to them by the trial judge.

[1] By section 5a, pt. 2, p. 284, of the act it is provided that, should the insurer, without justifiable cause, refuse to make prompt payment of the assessments decreed by the Industrial Accident Board as the same mature, then the injured employé or his beneficiary shall have the right to mature the entire claim and to institute suit thereon to collect the full amount of the award, together with 12 per cent. penalty and attorney's fees. While plaintiff did allege in his petition such a failure on the part of defendant, coupled with an allegation of his right thereby to mature the entire amount of his claim, yet the trial judge did not submit to the jury the issue whether or not the defendant had, "without justifiable cause," refused to pay said awards, and no complaint is made by the appellee here of the failure of the court to submit that issue. Furthermore, as shown by plaintiff's petition, he was not willing to abide by the decision of the Industrial Accident Board, and instituted this suit under the provisions of section 5, pt. 2, p. 283, of the act, according to the terms of which the decision of the board was thereby abrogated, and exclusive jurisdiction to determine the controversy was vested in the court in which the suit was instituted. Plaintiff could not thus repudiate and abrogate the ruling of the Industrial Accident Board, and at the same time treat it as effective and binding upon the defendant and seek to hold it liable for a lump sum settlement of his claim by reason of its failure to comply with mandates of the board. The only basis for a verdict in plaintiff's favor for a lump sum settlement submitted in the court's charge was the issue whether or not a manifest hardship and injury would result to the plaintiff if he were not allowed that relief in accordance with the provisions of section 15, pt. 1, p. 280, of the act, and no complaint was made by the plaintiff of the charge of the court in thus limiting his right to recover damages in a lump sum to that theory of his pleading.

In various sections of part 1 of the act it is provided that the Industrial Accident Board shall allow compensation for the injuries received by an employé of a subscriber

212 S.W.—16

to the act, and the rules for computing the compensation are prescribed. Section 10, pt. 1, p. 274, of the act reads as follows:

"While the incapacity for work resulting from injury is total, the association shall pay the injured employé a weekly compensation equal to sixty per cent. of his average weekly wages, but not more than $15.00 nor less than $5.00, and in no case shall the period covered by such compensation be greater than four hundred and one (401) weeks from the date of the injury."

Section 12d, pt. 1, p. 278, of the act reads as follows:

"Upon its own motion or upon the application of any person interested showing a change of conditions, mistake, or fraud, the board at any time within the compensation period may review any award or order, ending, diminishing or increasing compensation previously awarded within the maximum and minimum provided in this act, or change or revoke its previous order sending immediately to the parties a copy of its subsequent order or award. Review under this section shall be only upon notice to the parties interested."

Section 15, pt. 1, p. 280, of the act provides:

"In cases where death or total permanent incapacity results from an injury, the liability of the association may be redeemed by payment of a lump sum by agreement of the parties thereto, subject to the approval of the Industrial Accident Board."

The court did not submit the issue of a partial incapacity to labor, resulting from plaintiff's injury, total incapacity being the only incapacity submitted, and the verdict of the jury, construed in the light of the charge, indicates a finding of a permanent total incapacity to labor by reason of plaintiff's injuries, since he was allowed a maximum compensation equivalent to $15 per week for 401 weeks by increasing the weekly compensation with a corresponding decrease of the number of weeks in accordance with section 15a, pt. 1, p. 281, of the act, which was given to the jury by the court in his charge, after crediting the defendant with the payment of 12 weekly installments of $15 each, or $180 in the aggregate, already paid.

Appellant has cited the Southern Surety Co. v. Stubbs, 199 S. W. 343, and Southwestern Surety Ins. Co. v. Curtis, 200 S. W. 1162, announcing the rule that a judgment cannot be rendered upon an obligation which has not matured, and upon those authorities it is insisted that the judgment in the trial court was erroneous in that execution was awarded to collect the weekly installments to mature in the future. Appellant has also cited the provisions of section 5, pt. 2, p. 283, of the act wherein it is said that, if either party shall be dissatisfied with the final ruling of the Industrial Accident Board, and shall institute suit to recover for the injury, in ac-

cordance with the terms of that section, "the rights and liability of the parties thereto shall be determined by the provisions of this act."

After the verdict was returned appellant filed a motion that judgment be entered in accordance with a form tendered which embodied in it the right and power of the court to review the same and diminish, increase, or terminate the liability of the defendant in accordance with the provisions of section 12d, copied above, with the right in the defendant at any time to redeem its entire liability by payment of a lump sum upon agreement with plaintiff thereto and with the approval of the Industrial Accident Board in accordance with the provisions of section 15, pt. 1, p. 280, of the act. But the proposed form concluded with this provision:

"To enforce the above judgment all process necessary, or permitted by law to enforce this judgment, or to keep the same in existence may be issued."

[2, 3] It is a familiar rule that the clerk of the court cannot be made the judge to determine what character of process he shall issue, and in order to conform to that rule the judgment should have provided for the issuance of executions to collect the various installments of compensation awarded as they shall mature. And we are of the opinion that the proposed form of judgment with that change and with the further change that any future agreed lump sum settlement shall be with the approval of the trial court should have been adopted.

Such a judgment, perhaps, would be contrary to the general rule that a recovery cannot be decreed upon an obligation which has not matured, but it will be necessary to depart from that rule in order to give effect to the provisions of the Compensation Act referred to already. At all events, appellant is in no position to complain of such a judgment, since it has invoked the entry of the same.

[4, 5] The act does not specifically vest in a court trying such a case as this the power given to the Industrial Accident Board by section 15, pt. 1, copied above, to approve any agreed lump sum settlement, nor the power given that board by section 12d, copied above, to review, terminate, diminish, or increase an award of compensation previously made, but we are of the opinion that the court is, by implication, vested with such power, in view of the provision of section 5,

pt. 2, p. 283, of the act, to the effect that, "whenever such a suit is brought, the rights and liability of the parties thereto shall be determined by the provisions of this act." We do not think that it was the intention of the Legislature to vest in the Industrial Accident Board the power to review a judgment rendered by a court of competent jurisdiction of the issues involved in a suit like the present one in violation of the general rule that, where a court once acquires jurisdiction over a controversy, it retains such jurisdiction for all purposes necessary to a final determination of the rights of the parties.

[6] By another assignment appellant complains of the refusal of its requested instruction to the effect that the plaintiff was entitled to receive only 60 per cent. of his average weekly wages during the time he was totally incapacitated for work, in no event to exceed $15 per week nor less than $5 per week, and that such average weekly wages should be computed upon the basis of the average annual wages of other employés working in the same class of work, if the jury should find that plaintiff had not worked in the employment in which he was engaged at the time of his injury during substantially the whole of the year next preceding his injury.

This assignment is overruled because the proof was uncontroverted that plaintiff worked in the employment in which he was engaged at the time of his injury for several years prior to his injury, and, that being true, his average weekly wages, and not the average weekly wages of other persons similarly engaged, was the proper basis for determining the amount of compensation to be awarded to him. See subsection 1 of section 1, pt. 4, p. 291, of the act. Furthermore, no evidence has been pointed out by appellant, and we have found none, to show such average weekly wages of such other employés for the preceding year.

Accordingly the judgment of the trial court will be reformed as indicated above, and as so reformed it will be in all things affirmed; and this decision will be certified to the trial court, with instructions to retain the suit upon its docket for the purpose of further proceedings therein in the event of the happening of any of the contingencies specified in the judgment for reviewing the same and ending, diminishing, or increasing the amount of the award so decreed to the plaintiff. Costs of appeal are taxed against the appellant.