TEXAS EMPLOYERS' INS. ASS'N v. DOWNING. (No. 1575.)

(Court of Civil Appeals of Texas. Amarillo. Nov. 26, 1919. On Motion for Rehearing, Jan. 14, 1920. Second Motion for Rehearing Denied Feb. 11, 1920.)

1. MASTER AND SERVANT ⬥405(6)—EVIDENCE SHOWING TOTAL AND PERMANENT DISABILITY ENTITLING EMPLOYÉ TO LUMP SUM COMPENSATION.

In an action by an employé against the Texas Employers' Insurance Association to set aside an award of the Industrial Accident Board and to recover compensation in a lump sum for total and permanent disability, evidence held sufficient to sustain jury's findings in favor of plaintiff.

2. APPEAL AND ERROR ⬥920(1)—THAT ORDER OVERRULING GENERAL MOTION WAS MADE ON SUSTAINABLE GROUND PRESUMED.

Where an order overruling a motion is general, if there is any theory on which the ruling can be sustained, the appellate court will assume that it was made on that ground.

3. MASTER AND SERVANT ⬥399—AUTHORITY TO ORDER PHYSICAL EXAMINATION OF EMPLOYÉ IS DERIVED FROM WORKMEN'S COMPENSATION LAW ALONE.

In a servant's action against the Texas Employers' Insurance Association the Workmen's Compensation Law is the sole authority by which the court may order a physical examination of plaintiff without his consent; for in the ordinary case the court is without such power.

4. CONSTITUTIONAL LAW ⬥83(1) — MASTER AND SERVANT ⬥347, 399 — WORKMEN'S COMPENSATION LAW; STATUTORY PROVISION REQUIRING PHYSICAL EXAMINATION OF INJURED SERVANT IS APPLICABLE IN COURT, AS WELL AS BEFORE BOARD, AND IS CONSTITUTIONAL.

The provisions of Workmen's Compensation Law (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—42, 5246—44), for physical examination of servant asking damages for personal injuries apply after the proceeding has been transferred to the courts, as well as while pending before the Industrial Accident Board; and such statute is not in violation of Const. art. 1, § 9, guaranteeing personal rights.

5. MASTER AND SERVANT ⬥358, 399—FAILURE TO GIVE NOTICE UNDER WORKMEN'S COMPENSATION LAW RENDERS EMPLOYÉ SUBJECT TO ACT AND TO REQUIREMENT AS TO PHYSICAL EXAMINATION.

An employé of a subscriber under the Workmen's Compensation Law by failing to give the notice provided by Vernon's Ann. Civ. St. Supp. 1918, art. 5246—4, waives his right to claim damages for compensation except under article 5246—5, and thus waives his right to assert common-law liability, and consents to the terms of the act, and may be compelled to submit to a physical examination in his action to set aside an award and for compensation in a lump sum.

6. MASTER AND SERVANT ⬥399 — EMPLOYÉ UNDER WORKMEN'S COMPENSATION LAW MAY BE COMPELLED TO SUBMIT TO PHYSICAL EXAMINATION.

Vernon's Ann. Civ. St. Supp. 1918, art. 5246—42, gives the master's insurer the privilege of having a physical examination of plaintiff servant made by a physician of his own selection; and, in case of refusal, the insurer should apply to the Industrial Board or court having jurisdiction of the case for an order for the examination, and such tribunal should then provide therefor.

7. MASTER AND SERVANT ⬥418(5)—REFUSAL TO ORDER PLAINTIFF SERVANT TO SUBMIT TO PHYSICAL EXAMINATION SUBJECT TO REVIEW FOR ABUSE OF DISCRETION.

Where a motion for an order to compel the plaintiff to submit to a physical examination appealed to the general powers of the court conferred by Workmen's Compensation Law (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—42), if the court's action thereon is largely discretionary, it may be reviewed in case of abuse of discretion.

8. MASTER AND SERVANT ⬥399—STATUTORY RIGHT TO PHYSICAL EXAMINATION OF INJURED SERVANT IS MANDATORY, BUT DEPENDS ON REQUEST THEREFOR.

The general provisions of the Workmen's Compensation Law relative to compelling servant suing for personal injuries to submit to examination by physicians are not limited by the

specific provisions requiring its exercise in particular cases, but make its exercise in those particular cases mandatory instead of discretionary, although the defendant master or insurer, before it could complain of the court's refusal to order an examination under its general discretionary authority, would probably have to allege a request and a refusal.

9. MASTER AND SERVANT ☞399—FACTS HELD TO REQUIRE ORDER THAT INJURED SERVANT SUING FOR COMPENSATION SUBMIT TO PHYSICAL EXAMINATION.

Facts developed on trial of motion for order for plaintiff to submit to physical examination, as well as on the merits of the case, *held* to show that the true extent and effect of plaintiff's injuries was in doubt after the introduction of all available testimony, and that the X-ray examination sought would probably ascertain the truth and clear up the doubt, so that the motion should have been granted.

10. PLEADING ☞8(20) — PETITION HELD TO PLEAD CONCLUSIONS AS TO EXTENT OF SERVANT'S INJURIES.

In a servant's action against the insurer for compensation, general conclusions as to the result of the injuries, followed by the allegation that "said injuries so received at said time and place are as follows," would be sufficient, if shown by specific description of the injuries; but, where the attempted specification is about as general and indefinite as the conclusion, the petition is insufficient, since the nature and extent of the injuries cannot be ascertained by reading it.

11. MASTER AND SERVANT ☞385(20)—WORKMEN'S COMPENSATION LAW; HARDSHIP WORKED BY WEEKLY ALLOWANCE, INSTEAD OF LUMP SUM IS TO BE CONSIDERED.

In view of Vernon's Ann. Civ. St. Supp. 1918, art. 5246—33, providing that insurer's liability in case of servant's death or total permanent incapacity may be redeemed by payment of a lump sum by parties' agreement, but excluding any other lump sum settlement, except where in the judgment of the board manifest hardship or injustice would otherwise result, and article 5246—34, contemplating that weekly compensation would sometimes work hardships, the facts that a lump sum settlement would enable the injured servant to live upon his unimproved farm, and that he could not support his family in town upon the weekly allowances, are to be considered.

12. MASTER AND SERVANT ☞417(5)—ACTION TO SET ASIDE AWARD OF INDUSTRIAL ACCIDENT BOARD IS TO BE TRIED DE NOVO.

In a servant's suit against the Texas Employers' Insurance Association to set aside an award of weekly payments and for a lump sum settlement, the case is tried de novo, and the burden of proof is upon plaintiff; and, while the petition should refer to the proceeding before the Industrial Accident Board, in order to show the court's jurisdiction, and it would perhaps be necessary to file a certified copy of the award, yet the jurisdiction is for the court's determination, and the board's award is immaterial to any issue to be tried to the jury.

13. MASTER AND SERVANT ☞393 — WORKMEN'S COMPENSATION LAW; NUMBER OF WEEKS FOR WHICH COMPENSATION FOR TOTAL PERMANENT INCAPACITY IS ALLOWABLE.

Under Workmen's Compensation Law (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—18), providing that the association will pay the injured employé a weekly compensation for not more than 400 weeks from date of injury, while article 5246—8 provides that compensation shall begin to accrue on the eighth day after the injury, or after incapacity commences, if total and permanent incapacity continues for 400 weeks after the date of the injury, the servant is entitled to compensation for 400 weeks, not 401 weeks.

14. MASTER AND SERVANT ☞417(5)—REFUSAL TO SUBMIT SPECIAL ISSUES AS TO TOTAL AND PERMANENT INCAPACITY NOT ERROR IN VIEW OF CHARGES GIVEN.

Where the court charged that the burden was upon plaintiff servant, suing to set aside an award of the Industrial Accident Board, to show that his total and permanent incapacity resulted from the accidental injury, and also gave defendant's special charge on proximate cause, there was no error in refusing the submission of a special issue as to whether plaintiff received any of the injuries alleged, and whether such injuries resulted in total and permanent incapacity.

15. TRIAL ☞350(2), 356(5)—ONLY ULTIMATE CONTROLLING SPECIAL ISSUES NECESSARY TO JUDGMENT ON THE PLEADING NEED BE SUBMITTED OR ANSWERED.

Vernon's Sayles' Ann. Civ. St. 1914, art. 1985, providing that the court shall "submit all the issues made by the pleading," and article 1984a, providing for submitting upon request "special issues raised by the pleadings and the evidence," require the court to submit only the ultimate controlling issues necessary to a judgment on the pleading, and not subordinate issues necessarily embraced in the finding of the ultimate issue, so that, if answers in a special verdict dispose of the controlling issues, judgment may be rendered thereon, although all issues are not answered.

16. MASTER AND SERVANT ☞417(8)—WORKMEN'S COMPENSATION; REFUSAL TO SUBMIT SUBORDINATE ISSUE COVERED BY MORE GENERAL ISSUE IS HARMLESS.

In a servant's action against the Texas Employers' Insurance Association to set aside an award of compensation, where the issue of proximate result was clearly submitted, if defendant was technically entitled to the submission of a special subordinate issue thereunder, any error in refusing it was harmless.

17. MASTER AND SERVANT ☞417(9)—WORKMEN'S COMPENSATION LAW; COURT MAY GRANT WEEKLY PAYMENTS IN ACTION FOR SETTLEMENT IN LUMP SUM.

Where injured servant's suit against the Texas Employers' Insurance Association was filed in the district court to set aside weekly payment award, and to recover lump sum, the entire case was then before such court, which could, if it decided that plaintiff was totally and

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
218 S.W.—8

permanently disabled, but not entitled to receive compensation in bulk, award compensation for partial disability or total disability for a limited time, or until complete or partial recovery to the same extent as the Industrial Accident Board.

**18. MASTER AND SERVANT ⊜⇒417(5)—WORKMEN'S COMPENSATION LAW; ISSUES OF EXTENT AND OF DURATION OF EMPLOYÉ'S INCAPACITY SHOULD BE SEPARATED.**

In a servant's action to set aside award of the Industrial Accident Board and for lump sum settlement, the court ,should separate the issues of the extent of plaintiff's incapacity and of the duration thereof.

### On Motion for Rehearing.

**19. APPEAL AND ERROR ⊜⇒544(1)—BILL OF EXCEPTIONS TO REVIEW RULING ON MOTION FOR PHYSICAL EXAMINATION NECESSARY.**

If an objection to the consideration of an assignment of error to proceedings on motion for examination of injured plaintiff that there was no bill of exceptions as required by court rules 53, 54, and 55 for district and county courts (142 S. W. xxi) had been presented at the proper time, the court would have been bound to sustain it.

**20. APPEAL AND ERROR ⊜⇒835(2)—OBJECTION TO ASSIGNMENT AS NOT SUPPORTED BY BILL OF EXCEPTIONS MADE FIRST ON MOTION FOR REHEARING TOO LATE.**

Where a case was fully briefed by both parties, and orally argued on original submission and no objection to an assignment for lack of bill of exceptions thereon was urged, the Court of Appeals was justified in considering the assignment on the appellant's uncontested statement, and it is too late on motion for rehearing to consider the objection, in view of rules 40 and 41 of Courts of Civil Appeals (142 S. W. xiv).

**21. MASTER AND SERVANT ⊜⇒399 — WORKMEN'S COMPENSATION LAW; EVIDENCE HELD SUFFICIENT TO REQUIRE COURT ORDER FOR PHYSICAL EXAMINATION OF INJURED SERVANT.**

In a proceeding under the Workmen's Compensation Law to compel the injured servant to submit to a physical examination, where there was no conflict in the evidence on the hearing of the motion to the effect that an X-ray examination would be helpful in clearing up the controversy as to spinal injury, the testimony of a physician on the subsequent trial would not justify the court's overruling such motion as a matter of discretion.

**22. MASTER AND SERVANT ⊜⇒417(4½)—WORKMEN'S COMPENSATION LAW; OBJECTION TO ORDER FOR PHYSICAL EXAMINATION OF EMPLOYÉ NOT SUPPORTED BY RECORD.**

In a servant's action to set aside an award of weekly compensation and for lump sum payment, an objection that the time for making a physical examination of plaintiff as fixed by defendant's motion therefor was not reasonable, and would have delayed the trial of the cause, must be overruled, where the record does not support .such statement, nor show that the examination was resisted for such reason.

**23. APPEAL AND ERROR ⊜⇒671(1) — RECORD MUST SHOW MATTERS ASSIGNED AS ERROR.**

Objections on appeal to action of the court below cannot be sustained, where the matters complained of are not shown by the record.

**24. MASTER AND SERVANT ⊜⇒399 — WORKMEN'S COMPENSATION LAW; ·NEW MATTER SUFFICIENT TO REQUIRE FURTHER PHYSICAL EXAMINATION OF INJURED SERVANT.**

Where injured servant, suing to set aside Industrial Board's award and for lump sum settlement had been examined by order of the Industrial Board, but had made no claim before filing of suit for injuries to sight and hearing, and it subsequently became known that one of the physicians would testify that he had curvature of the spine, such facts afforded reasonable grounds for defendant's request to the court for a physical examination as to such matters.

**25. MASTER AND SERVANT ⊜⇒399 — WORKMEN'S COMPENSATION LAW; MOTION TO SUSPEND COMPENSATION WHILE SERVANT REFUSES TO SUBMIT TO PHYSICAL EXAMINATION HELD NOT NECESSARY.**

In a servant's action to set aside a weekly compensation award and for lump sum settlement, where the court had refused to order that plaintiff submit to a physical examination, it was not necessary that a motion should be made that plaintiff be refused compensation until he submit to examination, since, in view of Vernon's· Ann. Civ. St. Supp. 1918, art. 5246—42, he could not be allowed compensation while his refusal continued.

**26. APPEAL AND ERROR ⊜⇒1040(10)—ERRONEOUS OVERRULING OF EXCEPTIONS TO COMPLAINT NOT REVERSIBLE, NO HARM RESULTING.**

The erroneous overruling of special exceptions that allegations in plaintiff's petition were not sufficiently specific do not require reversal, where the record does not show that they probably resulted in harm.

**27. TRIAL ⊜⇒255(4)—REQUEST FOR INSTRUCTION LIMITING EVIDENCE UNNECESSARY WHERE COURT'S RULING PRACTICALLY DENIES SUCH REQUEST.**

Although the party .objecting to the introduction of evidence admissible for a particular purpose should ordinarily request an instruction limiting it, where the effect of the objection amounted to a request to limit the testimony and the ruling of the court admitting it "in evidence for whatever it proves," it was not necessary for appellant to make formal motion to limit such evidence.

**28. MASTER AND SERVANT ⊜⇒417(5)—WORKMEN'S COMPENSATION; EVIDENCE PRESUMED TO HAVE BEEN BEFORE THE JURY IN ACTION TO SET ASIDE AWARD.**

In a servant's action to set aside award of the Industrial Board and to recover a lump sum, the fact that the award introduced in evidence, and which was not limited by instruction to the purpose for which it was admissible, was not read at the time it was offered was not material, since it was presumably read when the petition was read, and was presumably in the

⊜⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

hands of the jury as an exhibit to the petition in their retirement.

**29. MASTER AND SERVANT** ⚙➡417(8)—WORKMEN'S COMPENSATION; ERROR IN NOT PROPERLY LIMITING TESTIMONY IN ACTION TO SET ASIDE AWARD HELD NOT HARMLESS.

In a servant's action to set aside award of weekly payments and to recover lump sum, where the evidence was sharply conflicting as to the extent of the plaintiff's injuries, and the jury was evidently in doubt as to the truth of the matter, it cannot be said that the admission in evidence of the finding of the Industrial Accident Board that the injury had resulted in total incapacity, where not properly limited by instructions, might not have had a deciding effect on the jury, so that the error is not harmless.

**30. MASTER AND SERVANT** ⚙➡417(3¾)—WORKMEN'S COMPENSATION LAW; PETITION TO SET ASIDE AWARD HELD SUFFICIENT.

In a servant's action to set aside an award of weekly payments and to recover a lump sum, the statement of the injuries, the incapacity, and the weekly wage, embraced all the essential elements of a good cause of action, and it was not necessary that the measure of damages be stated in the petition, and plaintiff's overestimating the extent of his injuries or incapacity or average weekly wage would not prevent awarding such compensation as he would be entitled to under facts proven, and his seeking commutation of damages to a lump sum would not prevent the court's applying the prescribed measure of damages applicable to all but exceptional cases, in event plaintiff did not bring himself within the exceptions.

Appeal from District Court, Potter County; Henry S. Bishop, Judge.

Suit by Thomas Downing against the Texas Employers' Insurance Association to set aside an award of the Industrial Accident Board, allowing plaintiff compensation under the Workmen's Compensation Law, and to recover compensation in a lump sum for injury sustained while working for Alex and Sam Davidson. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Harry P. Lawther, of Dallas, for appellant.
L. C. Barrett, J. N. Browning, and W. H. Childers, all of Amarillo, for appellee.

BOYCE, J. Appellee, Thomas Downing, brought this suit in the district court of Potter county, against appellant, Texas Employers' Insurance Association, to set aside an award of the Industrial Accident Board, made on the appellee's claim for compensation under the provisions of the Workmen's Compensation Law, and to recover compensation in a lump sum for total and permanent disability, alleged to have resulted to plaintiff as the result of an injury received while in the employ of a subscriber within the terms of said law. Plaintiff alleged that, while working for Alex and Sam Davidson, who were engaged in the manufacture and sale of ice in Amarillo, Potter county, Tex., and who were subscribing members of the Texas Employers' Insurance Association, he sustained injuries while in the regular course of his employment in the following manner: That while dragging a piece of ice, weighing about 300 pounds, down an incline he slipped and fell down such incline, and the piece of ice slid down against him, and so crushed him that he has been totally and permanently disabled; that he thereafter made his claim to the Industrial Accident Board, and the board made an award thereon; that the plaintiff was not satisfied with said award, and within due time gave notice that he would not abide thereby, and brings this suit to set aside said award and to secure compensation under said law. Plaintiff further alleged that he was wholly and permanently disabled, and was entitled to the maximum compensation of $15 per week; that by reason of certain facts particularly stated, and which we shall detail more fully later, the association should be required to pay the compensation to which plaintiff is entitled in a lump sum, as manifest hardship and injustice would otherwise result. The association answered by exceptions, general denial, and special denial that plaintiff suffered any injury in the course of employment as alleged. The jury found, in response to special issues submitted, that the plaintiff was injured as alleged; that such injury totally and permanently incapacitated the plaintiff from performing wage-earning labor; that it would be a manifest hardship and injustice to plaintiff to award him weekly payments as damages, instead of paying such damages in bulk, and that $1,500 was the bulk sum to which he was entitled as compensation. On this verdict judgment was rendered for the plaintiff for said sum of $1,500.

[1] The evidence is sufficient to sustain the findings of the jury, and we need make no further particular statement at this time, but will make such further detailed statement of the proceedings as is necessary in connection with the discussion of the various assignments.

The first assignment complains of the overruling of a motion made by the defendant for an order, requiring the plaintiff to submit himself for examination before a committee of three physicians, to be named by the court, one of whom should be an X-ray expert, and one of whom should be an eye and ear specialist. It was alleged in this motion that the Industrial Accident Board had theretofore entered an order for examination, and the plaintiff submitted himself to the physician named in the order, and such physician would testify that the plaintiff was not suffering from the injuries complained of; that the defendant was informed and believed

that two other physicians would testify that the plaintiff was suffering from some of the injuries complained of; that all of the physicians who had examined the plaintiff reported that an X-ray examination would certainly and definitely disclose the truth of such controverted issue; and that there was no other means by which such matter could be certainly determined. It was further alleged in the motion that plaintiff claimed and would testify at the trial that his eyesight had been injuriously affected as a result of the injuries sustained by him; that none of the physicians who had examined him had made an examination to ascertain the truth of such claim, for the reason that they were not specialists, and that all of said physicians agreed that to determine such matter an examination by an eye specialist should be had; that the defendant had requested that the plaintiff submit himself for an examination to some X-ray specialist; and that the plaintiff had refused to comply with such request. The defendant in said motion offered to pay the costs of such examination, and asked that the order of the court provide that both the plaintiff and defendant be permitted to have a physician, of their own selection, present at such examination. This motion was made and overruled at the term before the trial was had. On the trial of the motion three of the physicians who had examined the plaintiff, including his personal physician, testified that in their opinion an X-ray picture of the parts of the body which plaintiff claimed were injured would more certainly disclose the truth of the matter than they were able to do upon their examination; that neither of them were eye and ear specialists; and that such a specialist could more certainly decide as to the trouble with plaintiff's eyesight and hearing, of which he complained, and whether the same was caused by the accident.

On the trial of the case these further proceedings were had, which may have some bearing in determining whether there was any prejudicial error in the action of the court in overruling the motion: Plaintiff testified that when the ice fell against him it hurt him in the back, hips, head, arms, and practically all over; that his hand was paralyzed, his face has a tingling in it all of the time; that his intestines, kidneys, and bowels were affected; that his eyesight and hearing were not as good as they were before the injury; that he had frequent sinking and fainting spells, and was unable to do any work whatever, and was confined to his bed most of the time until the time of the trial; that he was able to walk only with difficulty, and that all of these conditions had existed from soon after the date of the injury until the time of the trial. The only specific injury of which there was any external evidence as testified to by the plaintiff, his wife, and the physician, who was first called, consisted of a bruise near the spinal column in the small of the back, and a bruise extending around to his right side; also a bruised condition of one hand. The principal medical testimony offered by plaintiff was that of Dr. Harris, who examined him about three months after the injury, and who testified that he found no evidence of any serious trouble, except in the spine; that he found a curvature of the spine, with a great deal of tenderness in that region; that the hips were tilted, resulting in a shortening of one leg, which he attributed to the curvature of the spine. This physician also testified that he did not examine the plaintiff's sight or hearing, and that a specialist would be better able to make such examination and come to a conclusion as to whether such defect, if it existed, could result from any injury received in the accident. He further testified that in his opinion an X-ray would not assist the jury in finding out what was the matter with plaintiff. He admitted that X-ray examinations were extensively used in the medical profession; that it was not possible to make the X-ray pictures so as to deceive, but stated that X-ray pictures were hard to read, and might be read so as to deceive. On the trial defendant offered the testimony of two physicians who had examined the plaintiff, and they both stated that they did not find any curvature of the spine, any disarrangement of the hips, or any other evidence of any serious injury to the plaintiff; that an X-ray examination would definitely determine any question as to the curvature of the spine, and that an examination by a specialist would more definitely determine the nature and cause of any defect in plaintiff's sight and hearing. These physicians testified that in their opinion the plaintiff's troubles were imaginary. The court submitted to the jury issues only as to whether plaintiff was totally and permanently disabled as a result of the accident, and whether he was entitled to bulk compensation. The jury, some time after their retirement, returned into court and propounded the following questions to the court:

"(1) In case the jury should agree to allow damages to plaintiff, would it be necessary that such amount be paid in bulk, or can it be paid weekly? (2) Should the jury agree that plaintiff is not permanently or totally disabled, can we allow any compensation at all?"

The court informed the jury that it would be improper for him to answer these questions, and instructed them to consider and answer the special issues theretofore submitted.

[2] It was stated in argument that the court overruled the motion, on the ground that he was without power to order the examination. The order overruling the motion

is general, however, so that if there is any theory on which the ruling can be sustained we would have to assume that it was made on that ground.

[3] However, the power of the court in the premises is logically the first matter for consideration in the examination of the question, and we will first consider such matter. We may begin its consideration with the proposition that we must look to the Workmen's Compensation Law for any authority the court may have to order a physical examination without the consent of the plaintiff; for in the ordinary case the court is without such power. Austin & Northwestern Ry. Co. v. Cluck, 97 Tex. 172, 77 S. W. 403, 64 L. R. A. 494, 104 Am. St. Rep. 863, 1 Ann. Cas. 261.

[4, 5] The provisions of the said Workmen's Compensation Law that may be applicable are contained in sections 42 and 44, of the act (articles 5246—42 and 5246—44, Vernon's Civil Statutes, 1918 Supp.). In the first article named it is provided that the Industrial Accident Board "may require any employé claiming to have sustained injury to submit himself for examination before such board or some one acting under its authority at some reasonable time and place within the state, and as often as may be reasonably ordered by the board to a physician or physicians authorized to practice under the laws of this state. If the employé or the association requests, he or it shall be entitled to have a physician or physicians of his or its own selection present to participate in such examination. Refusal of the employé to submit to such examination shall deprive him of his right to compensation during the continuance of such refusal." In a subsequent paragraph of the same article, it is further provided that:

"The association shall have the privilege of having any injured employé examined by a physician or physicians of its own selection, at reasonable times, at a place or places suitable to the condition of the injured employé and convenient; and accessible to him; provided, however, that the association shall pay for such examination and the reasonable expense incident to the injured employé in submitting thereto, and provided further that the injured employé shall have the privilege to have a physician or physicians of his own selection, at the expense of such injured employé, present to participate in such examination."

The second article referred to provides that any interested party who is not willing to abide by the award of the Industrial Accident Board shall give certain notice to the adverse party, and within a stipulated time bring suit in some court of competent jurisdiction to set aside such award, and that "whenever such suit is brought, the rights and liability of the parties thereto shall be determined by the provisions of this act, * * * and the court shall * * * determine the issues in such cause instead of the board upon trial de novo and the burden of proof shall be upon the party claiming compensation."

Provisions for examination under the directions of the board in special circumstances are also found in other parts of the law, but we need not further refer thereto, but may say that it appears from the entire act that physical examination, either at the instance of the board or the insurance association, is made an important feature in the administration of the law, and evidently regarded by the lawmakers as being an important means of ascertaining the extent of the injury for which compensation is sought. The mere bringing of the suit in the courts in practical effect sets aside the award made by the Accident Board. The court thereafter has continuing jurisdiction of the proceeding, with power to make such orders therein from time to time in reference to allowing, diminishing, increasing, or discontinuing the weekly compensation that may have been allowed. U. S. Fidelity & Guaranty Co. v. Davis, 212 S. W. 239; Ga. Casualty Co. v. Geisenbeck, 210 S. W. 273. We think it clear that it was the intention of the Legislature that the provisions for physical examination should be applicable after the proceeding should have been transferred to the courts, as well as while it was pending before the board, and the only other inquiry pertinent to this phase of the question is whether such provision is in violation of the personal rights guaranteed by section 9, art. 1, of the Constitution.

The Supreme Court, in the case of Austin & N. W. Ry. Co. v. Cluck, supra, after quoting the provisions of section 9, art. 1, of the Constitution, makes this statement:

"Whether, under this guaranty of immunity from interference with the person, the Legislature might authorize the physical examination of a party to a suit is not before us for determination."

The ground of the decision that the court was without power to authorize the examination was the conclusion that no precedent for such a proceeding could be found in the common law, and no provision therefor was made in the Constitution or statutes, and that the court had no powers not recognized by the common law or by the Constitution or statutes. The same conclusion was reached by the Supreme Court of the United States on identical reasons. U. P. Railway Co. v. Botsford, 141 U. S. 250, 11 Sup. Ct. 1000, 35 L. Ed. 735. The Supreme Court of the United States later held that there were no constitutional objections to such a proceeding when it was authorized by legislative enactment. Camden Ry. Co. v. Stetson, 177 U. S. 172, 20 Sup. Ct. 617, 44 L. Ed.. 721. Such is also the holding of some other courts. R. C. L. vol. 14, p. 703, and authorities. We have found no authority which denies the

constitutional power of the Legislature to enact such laws. However, it does not become necessary to decide as to the general power of the Legislature to enact a law that would provide for a physical examination in the ordinary personal injury case, for such a provision in the Workmen's Compensation Law may be supported on grounds that would not be applicable in other cases. An employé of a subscriber under the provisions of the Workmen's Compensation Law, by failing to give the notice provided by section 4 of the act (article 5246—4, Vernon's Civil Statutes, 1918 Supp.), waives his right to claim damages for compensation except under the provisions of said law (article 5246—5, Vernon's Civil Statutes, 1918 Supp.). By thus accepting employment and waiving his right to assert the common-law liability of his employer, the employé consents in case of injury to receive compensation therefor subject to the terms of the act; and, as physical examination is a part of the procedure provided by the act to determine the right to compensation, and the amount thereof, the employé thus consents to the application of these provisions of the law in advance of the injury. We conclude that the court had the power to order such an examination as was prayed for in the motion, and must now ascertain how this power is to be exercised, and whether the party may review the action of the court therein.

[6] Article 5246—42 of the law, already quoted, gives the association the privilege of having a physical examination made by a physician of its own selection. The law does not expressly provide how this privilege shall be enforced nor the penalty for refusal. We take it that in case of refusal the association should apply to the board or court having jurisdiction of the case, for an order for the examination, and it would then be the duty of such tribunal to provide therefor under the power granted by the first paragraph of the said section, also already quoted.

[7] While it is stated in the motion that the appellant had requested the claimant to submit to an X-ray examination, and he had refused, the motion shows that appellant did not further insist on its statutory privilege, but by such motion, which requested the court to appoint the physicians, appealed to the general powers of the court conferred by the first paragraph of the article. Now this general power is in its terms discretionary, and it is insisted, with some reason, that the failure of the appellant to pursue his right expressly granted would preclude him from complaining of an abuse by the court of a discretionary power. It is true that the general power to which the appellant has applied is granted in language that is ordinarily construed as conferring discretion; but the exercise of many powers that are largely

discretionary may be reviewed in case of abuse.

[8] In those jurisdictions where the courts, independent of the statute, held that they had the power to order a physical examination, it was recognized that such power was discretionary, yet subject to review on appeal for abuse. The conclusions reached in such jurisdictions as to the power and the manner of its exercise are thus stated by a leading authority sustaining the right:

"(1) That trial courts have the power to order the medical examination by experts of the injured parts of the plaintiff, who is seeking to recover damages therefor; (2) that a defendant has no absolute right to demand the enforcement of such an order, but the motion therefor is addressed to the sound discretion of the trial court; (3) that the exercise of such discretion is reviewable on appeal, and correctable in cases of abuse; (4) that the examination should be applied for and made before entering upon the trial, and should be ordered and conducted under the direction of the court, whenever it fairly appears that the ends of justice require a more certain ascertainment of important facts which can only be disclosed or fully elucidated by such an examination, and such an examination may be made without danger to the plaintiff's life or health, or the infliction of serious pain; (5) that the refusal of the motion, when the circumstances appearing in the record present a reasonably clear case for the examination under the rules stated, is such an abuse of discretion in the trial court as will operate to reverse a judgment for the plaintiff; (6) that such an order may be enforced, not by punishment as for contempt, but by delaying or dismissing the proceeding." City of South Bend v. Turner, 156 Ind. 418, 60 N. E. 271, 54 L. R. A. 396, 83 Am. St. Rep. 200.

The foregoing was quoted by our Supreme Court in the case of Austin & Northwestern Ry. Co. v. Cluck, supra, as being representative of the holdings of those courts which recognized the right of the court to order a physical examination, and the authority from which the quotation is taken is referred to as being "the best reasoned of them all." These propositions have also been frequently referred to by other courts as controlling the procedure in such cases. Western Glass Mfg. Co. v. Schoeninger, 42 Colo. 357, 94 Pac. 342, 15 L. R. A. (N. S.) 663, 126 Am. St. Rep. 165. Some of the express provisions of the Workmen's Compensation Law in reference to physical examination are strikingly similar to the propositions stated, and we think it reasonable to assume that the Legislature had these decisions in mind, and, in granting the general power conferred in the first paragraph of said article referred to, intended that it should be exercised according to the practice in those jurisdictions where it was already regarded as one of the inherent powers of the court in so far as such practice was not inconsistent with par-

ticular provisions of the statutory law. The general provisions of the statute, in our opinion, granted powers as broad as those held by some courts to be inherent, and the specific provisions requiring its exercise in particular cases does not, we think, limit the general powers, but makes its exercise in those particular cases mandatory instead of discretionary. It is probably true that the association, before it could complain of the action of the court in refusing to order an examination under its general discretionary authority, would be required to allege that it had requested an examination and been refused. I. & G. N. Ry. Co. v. Underwood, 64 Tex. 463; G., C. & S. F. Ry. Co. v. Norfleet, 78 Tex. 321, 14 S. W. 703. But when the proceeding has reached this stage, that is, request for examination by physicians named by the defendant, has been made and refused by the plaintiff, we think the defendant may then apply to the general power of the court, rather than insist on an examination being made by physicians of its own choosing. When the examination is to be made under the order of the court, it would seem obvious that an examination by disinterested experts chosen by the court, would be more conducive to the ascertainment of the truth than that of physicians selected by the plaintiff's antagonist, whose examination and opinions are more apt to be partisan, and in the ordinary case it is more appropriate to request the court to name the examiners. R. C. L. vol. 14, p. 712; Richmond Ry. v. Childers, 82 Ga. 719, 9 S. E. 602, 3 L. R. A. 808, 14 Am. St. Rep. 189.

[9] We are therefore of the opinion that if the facts are sufficient to show that an examination was reasonably necessary to a proper development of the truth of the issues for trial, the defendant ought not to be precluded from complaining of the abuse of the discretion of the court in such matter, merely because it requested the court to appoint physicians, instead of naming the physicians itself in the motion. We are thus brought to the final question in the decision of this assignment: Whether there was any abuse of such discretion in the denial of the motion in this case.

The motion itself, we think, states sufficient facts to show the necessity for such examination. The facts as developed on the trial of the motion and the case on its merits show that the issue as to the true extent and effect of the plaintiff's injuries is left in doubt after the introduction of the available testimony. The questions propounded by the jury to the court show that the jury was in doubt as to the truth of the case The facts further show, we think, that an X-ray examination, and an examination by an eye and ear specialist, would probably ascertain the truth and clear up the doubt as to such matter. Under these circumstanc-

es we think the court should have granted the motion and ordered an examination under such reasonable conditions as might be named in the order. We therefore sustain the first assignment.

[10] The second, third, fourth, fifth, sixth, seventh, and eighth assignments complain of the action of the court in overruling special exceptions to the plaintiff's allegations of the injuries sustained by him, because it is claimed such allegations are too general and indefinite, and do not inform the defendant of the character and extent of the injury to any particular part of plaintiff's body. Without taking these assignments up separately, we may say that we regard the petition as being subject to some of the objections urged thereto. It was evidently the intention of the pleader, by the allegations referred to in the first, second, and third special exceptions, to state only general conclusions as to the result and effect of the injuries to be more specifically alleged, for these general conclusions are followed by the allegation that "said injuries so received at said time and place are as follows." If the pleader had then described specifically the injuries actually inflicted on the various parts of his body claimed to be injured, the pleading would have been unobjectionable; but the attempted specification is about as general and indefinite as the general conclusion. The injury to any part of the body is not specifically described, but only general conclusions as to the effect thereof stated; and, when any attempt is made to be specific, the allegation is so interwoven with general conclusions and statements as to other parts of the body as to make it impossible to separate the allegations. No definite idea of the specific nature and extent of the injuries inflicted can be ascertained from a reading of the petition. We think the court should have sustained the special demurrers referred to in the fifth, sixth, seventh, and eighth assignments.

[11] By the tenth assignment the appellant complains of the admission of evidence to the effect that plaintiff could not support his family in town on the weekly compensation that would be paid under the Workmen's Compensation Law; that he owned a farm in New Mexico, which was unimproved, and that he and his family could not live thereon with the weekly allowances, but that if the compensation were paid in a lump sum, so that he might make some improvements on the farm and buy some stock, then his wife, with what little help he could give, would be able to make a living for the family on the farm, and they could thus live better and have some permanent means of support. That plaintiff had no other means of support or resources with which to go into business of any kind or establish himself on said farm. It is claimed under this assignment

that such facts, if true, do not warrant the award of the compensation in a lump sum, and the testimony should have been rejected as irrelevant and immaterial. The express provision of the Compensation Law which relates to the commutation of the weekly payments is to be found in article 5246—33, Vernon's Civil Statutes 1918, Supp., and is as follows:

"In cases where death or total permanent incapacity results from an injury, the liability of the association may be redeemed by payment of a lump sum by agreement of the parties thereto, subject to the approval of the Industrial Accident Board hereinafter created. This section shall be construed as excluding any other character of lump sum settlement save and except as herein specified; provided, however, that in special cases where in the judgment of the board manifest hardship and injustice would otherwise result, the board may compel the association in the cases provided for in this section to redeem their liability by payment of a lump sum as may be determined by the board."

This provision, as well as other parts of the act, show that it was the purpose of the law to require that in all ordinary cases the compensation should be paid weekly so as to take the place of the wage which the injured person was receiving, but the Legislature, as shown by the provisions of this article and article 5246—34, realized that application of the rule for the payment of the compensation in equal weekly payments would, in some instances, work hardships and injustice. It was evidently the purpose of the Legislature, by the general provision just quoted, to provide for relief against the application of the general rule in such cases, and the determination of the application of the exception to the rule is left to the judgment of the board. The discretion thus vested in the board, or trial court in case of removal to the courts under the law, will not be reviewed except for manifest abuse. Honnold on Workmen's Compensation, vol. 1, pp. 653–661; McCracken v. Missouri Valley Bridge & Iron Co., 96 Kan. 353, 150 Pac. 832, Ann. Cas. 1918B, 689. Under similar provisions, in other jurisdictions commutation has been allowed "in order to enable the employé to invest his compensation in a business of his own, to return to his native land, to discharge a mortgage on the dependent's home," and in a variety of other cases which involved inquiry as to the pecuniary situation of the beneficiary, in order to determine the justice of the particular situation. Honnold on Workmen's Compensation, pp. 655–658, and notes. We, therefore, overrule the tenth assignment.

[12] Complaint is made by the eleventh assignment of the introduction by appellee in evidence before the jury of the final award and ruling of the Industrial Accident Board.

By the terms of this award, the Accident Board found that the claimant had been injured; that his injury resulted in total incapacity, and an award of weekly compensation was ordered to be paid until further order of the board. As we have already seen, the trial, when the case is taken into the courts, is de novo, and the burden of proof is upon the party claiming compensation. While the petition in such suit should refer to the proceeding before the Industrial Accident Board, in order to show the jurisdiction of the court, and it would, perhaps, be necessary to file a certified copy of the award in such proceeding, the question of jurisdiction is for the determination of the court, and the award of the board is immaterial to any issue that is to be tried by the jury, and is no more admissible in evidence before it than the transcript of the judgment on the trial of an appeal before the justice's court, in which case it is held that it is improper to introduce in evidence before the jury or refer to the findings in the justice's court. Kelley v. Fain, 168 S. W. 869. The colloquy, which we need not set out at length, between counsel and the court, at the time of the introduction of the award in evidence, and which appellee contends renders the error harmless, emphasized, it seems to us, rather than minimized, the possible harmful effect of the evidence.

[13] The court's charge made the average weekly earnings of the plaintiff at the time of his injury for 401 weeks, with deductions for present payment, the basis of the assessment of compensation in bulk. Appellant objected to this charge, on the ground that the period for which weekly wages should be computed under the facts of the case should have been 401 weeks, less 11 days. This contention is based on the fact that the testimony shows that plaintiff worked for 3 days after the accident before he was incapacitated, and appellant claims that under the law his right to compensation would not begin until the eighth day after the incapacity began, and could then continue only for 401 weeks from the date of the injury. We do not agree with appellant that 11 days should have been deducted from the 401 weeks in the computation, so that his objection to the charge was not well taken. In view of another trial, however, we will say that we are of the opinion that under the facts of this case the computation of the bulk assessment should be made on the basis of 400 weeks. Article 5246—18 of said Compensation Law provides that—

"While the incapacity for work resulting from injury is total, the association shall pay the injured employé a weekly compensation equal to sixty per cent. of his average weekly wages, * * * but * * * in no case shall the period covered by such compensation be greater than four hundred and one (401) weeks from the date of the injury."

Article 5246—8 provides that—

"No compensation shall be paid under this act for an injury which does not incapacitate the employé for a period of at least one week from earning full wages, but if incapacity extends beyond one week compensation shall begin to accrue on the eighth day after the injury, * * * and provided further, that if incapacity does not follow at once after the infliction of the injury or within eight (8) days thereof but does result subsequently that compensation shall begin to accrue with the eighth day after the date incapacity commenced."

Under these articles of the statute the plaintiff's right to compensation began to accrue on the eighth day after the injury, and if total and permanent incapacity continued for 401 weeks after the date of the injury he could receive compensation only for 400 weeks.

[14] The appellant assigns error also in the refusal of the court to submit the following special issues, requested by it:

"If Downing has suffered from incapacity to labor since the date of the injury, has the same been due to causes other than the injury?"

There was testimony to the effect that prior to the accident plaintiff had suffered with his back and had had sinking spells similar to those from which he had suffered thereafter, and which he claimed to be the result of the injury. The issues submitted by the court required the jury to find: First, whether the plaintiff received any of the injuries as alleged; and, second, whether such injuries resulted in total and permanent incapacity. In connection with the second issue, the court, at the appellant's request, charged the jury that the burden was upon the plaintiff to show that the total and permanent incapacity resulted from the accidental injury, and also gave appellant's special charge on proximate cause. We do not think there was any error in refusing the submission of the issue under these circumstances. North American Accident Insurance Co. v. Miller, 193 S. W. 759, § 11; San Antonio Ry. Co. v. Dawson, 201 S. W. 250, § 5; G., H. & S. A. Ry. Co. v. Cook, 214 S. W. 546, § 13; K. C., M. & O. Ry. Co. v. Estes, 203 S. W. 1159, § 6; Sun Insurance Co. v. Beneke, 53 S. W. 101, § 4. An answer to the issue was necessarily comprehended in the answer to the issues already submitted. The defense, on account of the facts involved in an answer to this issue was merely a negative of the facts which were necessary to plaintiff's recovery.

[15] Our present laws in reference to the submission of cases on special issues are a development of previous laws in regard to special verdicts of the jury. It was and is the purpose of a special verdict to find the ultimate facts put in issue by the pleadings of the parties and necessary to dispose of the case by judgment, and if the answers to the jury contained in a special verdict are sufficient to dispose of the controlling issues, judgment may be rendered thereon, although the jury may not have answered all of the issues submitted. Sears v. Sears, 45 Tex. 557; Coons v. Lain, 168 S. W. 981. Article 1985 of the statute provides that the special verdict must find the facts established by the evidence, and requires the court "to submit all the issues made by the pleading." Article 1984a required the court to submit the case upon request on "special issues raised by the pleading and evidence" and provides that the article shall be construed in connection with article 1985. These provisions, we think, require the court to submit only the ultimate controlling issues necessary to a judgment on the pleading; this would require, of course, the submission as an issue of each material ultimate fact alleged by the plaintiff in support of his cause of action and each affirmative defense urged by the defendant. It would not require the submission of subordinate issues, a finding upon which would necessarily be embraced in the finding of the ultimate issue. One of the ultimate issues in this case was whether the accident was the proximate cause of the total and permanent incapacity which plaintiff claimed to exist. An answer to such issue necessarily involves a conclusion as to whether plaintiff's condition is due to other causes, anterior to and having no connection with the accident.

[16] As the issue of proximate result was clearly submitted, we do not think it was necessary to submit the subordinate issue requested by appellant. Even if appellant were technically entitled to the submission of the issue, we would be disposed to hold that the error in refusing its submission was harmless in this instance. We must say, however, that the decisions as to the proper practice in this matter are in conflict. It is true, we think, that if the case were submitted on a general charge, the defendant would have been entitled on proper request, to have a charge, grouping the facts of this defense, submitted and there are some authorities which hold that, even where the case is submitted on special issues, the parties are entitled to have submitted separate issues grouping the facts relied on in defense, though these may be merely in the nature of negatives to the plaintiff's case, and answers thereto would be comprehended in the general issues submitted. Ft. Worth & Denver City Ry. Co. v. Speer, 212 S. W. 766, § 10; G., H. & S. A. Ry. Co. v. Crowley, 214 S. W. 721, §§ 6, 7. The two decisions referred to were by the Ft. Worth court. The San Antonio court held, in the case of S. A., U. & G. Ry. Co. v. Dawson, 201 S. W. 250, § 5, that the rule which requires the court in a general charge to affirmatively submit as an issue each group of facts relied on by either party

to the suit, has no application to the submission of the case on special issues. The decisions of the Beaumont court, in the case of G., H. & S. A. Ry. Co. v. Cook, 214 S. W. 546, § 13, and of this court, in the case of North American Accident Insurance Co. v. Miller, 193 S. W. 759, § 11, are practically to the same effect. A writ of error was denied by the Committee of Judges in the case of North American Accident Insurance Co. v. Miller, supra. Of course, until the Supreme Court shall have finally passed on this matter, we cannot declare the law with any certainty, but until the matter is so settled we will adhere to our former conclusion.

[17] Appellant's attorney, in the course of his argument before this court, stated that the plaintiff, under his pleading, could recover all he claimed or nothing—that is, if he did not show himself to be totally and permanently disabled, and entitled to recover compensation in a lump sum, then he could not recover anything. The issues submitted by the trial court indicate that he took the same view of the matter. While no complaint is made of this by either party, we suggest, in view of another trial, that we do not think this is a correct theory of the plaintiff's rights. When the suit was filed in the district court the entire case was then before such court, and the court could, if the conclusion should be reached that the plaintiff was not totally and permanently disabled, or, if permanently and totally disabled, was not entitled to receive compensation in bulk, award compensation for partial disability or total disability, for a limited time or until recovery, complete or partial, to the same extent and under the same conditions as could the Industrial Accident Board in the first instance. U. S. Fidelity & Guaranty Co. v. Davis, 212 S. W. 239.

[18] We also suggest that in the submission of the issues the court should separate the issues as to the extent of the incapacity and duration thereof.

Reversed and remanded.

### On Motion for Rehearing.

[19] Appellee, in his motion for rehearing, calls our attention to the fact that the proceedings of the trial court, in respect to the motion to require a physical examination of the plaintiff, are not embodied in a formal bill of exceptions, but are preserved in the record only by the motion itself and order overruling it, which recites therein an exception on the part of the defendant, copied separately in the transcript, the statement of the evidence heard on the motion appearing in the statement of facts. Appellee now asserts that we were without authority to consider the assignment because of the absence of a bill of exceptions, as required by the rules. If this objection to the consideration of the assignment had been presented at the proper

time, we would have felt bound to have sustained it. Rules 53, 54, and 55 (142 S. W. xxi)'for the District and County Courts; Weatherford M. W., etc., Ry. Co. v. Smith, 170 S. W. 133; Panhandle, etc., Ry. Co. v. Kirby, 108 S. W. 498; Dixon v. Cooper, 178 S. W. 695; Paris, etc., Ry. Co. v. Boston, 142 S. W. 944.

[20] The case was fully briefed by both parties, and was orally argued on original submission, and no, such objection to the consideration of the assignment was then urged by appellee. The appellant, in the statement under the assignment, copied the motion in full, referred to the evidence introduced on its hearing, and stated that the court overruled the motion, and that appellant duly excepted to such action. The statement also referred to other proceedings had which were thought to have a bearing on the propriety of the action of the court on the motion. We think we were justified in considering the assignment on the uncontested statement made by appellant, and that it is now too late for appellee to urge this objection. Rules 40 and 41 (142 S. W. xiv) for the Courts of Civil Appeals; Southern Gas & Gasoline Engine Co. v. Adams & Peters, 169 S. W. 1149, opinion on motion for rehearing (writ of error was refused in this case); Taylor v. First State Bank, 178 S. W. 38, opinion on motion for rehearing.

[21] Most of the propositions now urged by appellee in the motion for rehearing in support of the action of the trial court in overruling the motion are different from those contained in appellee's original reply to this assignment, and we will notice these briefly. The first proposition now urged is that where the evidence was conflicting as to whether the examination would assist the jury, the court had the right to decide the conflict. There was no conflict in the evidence on the hearing of the motion. It is true that one physician on the subsequent trial of the case gave it as his opinion that an X-ray examination would not be helpful in clearing up the controversy as to the injury to the spinal column, but throughout the trial all the physicians agreed that an examination by a specialist was necessary to ascertain the extent and cause of the alleged injury to the sight and hearing.

[22, 23] It is also now asserted that the time for making the examination was not reasonable, and would have delayed the trial of the cause. The record does not support this statement, nor does it show that the examination was resisted for such reason. Appellee asserts that after the denial of this motion the case was continued on the application of the defendant. The record does not show this to be a fact. The bill of costs, which is the only record showing any continuance, shows that the case was continued once by the defendant and once by the plain-

tiff, the dates of the respective continuances not being shown.

[24] It is further asserted that the examination should have been refused because the appellant had already had the appellee examined under order of the Industrial Board. The examination made at the request of the Industrial Board was made before the filing of this suit. At that time the claim of the plaintiff for compensation was pending before the Accident Board, and the nature of his injuries was stated in such claim as follows:

"His ribs were bent or broken, his right lung crushed and bruised, and a broken rib punctured said lung. His back and kidneys were injured, and there were other internal injuries, the names of which are not known to the said Downing."

No claim was made before the filing of the suit apparently for injury to the sight and hearing. When the suit was filed, and it was then ascertained that the plaintiff claimed an injury to his sight and hearing, and it became known that one of the physicians would testify that he had a curvature of the spine, such facts we think afforded reasonable grounds for a request for further examination as to such matters.

[25] It is also now urged that the motion should have been that plaintiff be refused compensation until he should submit to examination. Such motion would harness the cart before the horse. R. S. 1918 (Vernon's Supp.) art. 5246—42.

[26] But if we are mistaken in our conclusion that it is now too late for appellee to urge the objection to the consideration of the first assignment, we think, in any event, the case should be reversed on the eleventh assignment. We would not reverse the case on account of the errors which we held to be shown by the fifth, sixth, seventh, and eighth assignments, because on the whole record it does not appear to us that these erroneous rulings probably resulted in any harm.

[27] In view of the new position which appellee takes with reference to the eleventh assignment, we deem a further statement, in addition to the statement in our original opinion, considering this assignment, necessary. The plaintiff, in support of his allegation in the petition that he had made his claim to the Industrial Accident Board, that it had made an award, and that the plaintiff had given notice of his unwillingness to abide by the same, attached copies of such proceedings as exhibits to his petition. The defendant took no exception to this action. In the progress of the trial plaintiff offered in evidence a certified copy of the award. We copy the following from the bill of exception, which shows the further proceedings which then took place:

"To the introduction of this evidence [the award] as proof of any of the facts therein recited or for any other purpose than as proof of the fact that a final ruling and decision of the Industrial Accident Board had been made, the said defendant, by its counsel, objected, upon the ground that the plaintiff, Thomas Downing, having given due and proper notice that he was unwilling and did not consent to abide by said final ruling and decision, and having instituted this suit to set aside said final ruling and decision, and the proceedings herein being de novo, any recital of fact contained in said final ruling and decision could not be legal evidence or proof of said facts, and should not be permitted to go to the jury as proof of said facts. To this objection Judge Barrett, counsel for plaintiff, replied: 'Well, if that was so—if that was a fact—it would be no account, your honor.' Whereupon the court overruled the said defendant's objection, with the remark: 'Well, I will admit it in evidence for whatever it proves.' And to this action of the court in so overruling the said defendant's objection and in permitting the plaintiff to read in evidence the final award and decision of said Industrial Accident Board, with the remark above quoted, the defendant by its counsel then and there excepted," etc.

This bill was approved with the following qualification:

"The copy of the award of the Industrial Accident Board was admitted in evidence over the objection of defendant, with this statement: 'Well, I will admit it in evidence for whatever it proves.' The defendant did not object to the same as to the fact that the award was made, but objected to the admission of the copy in evidence as proof of any of the facts stated in the award, which objection being overruled, defendant duly excepted thereto. Thereupon Judge Barrett, attorney for plaintiff, stated: 'Well, I read that to the jury. It is attached to the copy of the petition, and we will waive the reading of it. Copy of said award is dated the 18th day of September, 1918.' It was not then read to the jury, and was not thereafter read to the jury so far as my recollection goes. I do not remember of it having been read to the jury in the reading of the plaintiff's petition referred to in the argument, and I do not know as a fact that the jury ever read it or heard it read."

It is true that the party offering an objection to the introduction of evidence that is admissible for any purpose, before he can complain, should ordinarily request an instruction limiting the consideration of the evidence. H. & T. C. Ry. Co. v. Poole, 63 Tex. 246. The effect of the objection as it was made was a request for the limitation of the testimony, and the ruling of the court, under the circumstances, was an overruling of defendant's contention that the award was admissible only for limited purposes, and the statement of the court, made in overruling the objection, was equivalent to an instruction to the jury that they might consider the evidence for all purposes. Under these circumstances it was not necessary for appellant to make a formal motion to limit the evidence

before he could complain of the action of the court.

[28, 29] The fact that the award was not read at the time it was offered was not material, we think. It was presumably read when the petition was read; plaintiff's attorney so stated when he offered it, and it was presumably in the hands of the jury as an exhibit to the petition in their retirement. It appears in the statement of facts as having been introduced in evidence. As we have already seen, the evidence was sharply conflicting as to the extent of the plaintiff's injuries, and the jury were evidently in doubt as to the truth of the matter. Under the circumstances we cannot say that the admission in evidence of the finding of the Industrial Accident Board, to the effect that the injury had resulted in "total incapacity," etc., might not have had a deciding effect on the jury, and cannot say that the error is harmless. Commonwealth Bonding & Casualty Co. v. Hendricks, 168 S. W. 1010, opinion on motion for rehearing.

[30] Appellant, in its answer to the appellee's motion for rehearing, takes issue with our conclusion that it was improper to submit the case on the theory that plaintiff must recover in a lump sum for total incapacity, or take nothing, and contends that the pleading is insufficient to award any other relief than recovery in a lump sum. The plaintiff pleaded the accident and resultant injuries, from which it was concluded that he had suffered total and permanent incapacity. He also pleaded the amount of his average weekly wage, and other facts which he claimed were sufficient to require payment of the compensation in a lump sum instead of in weekly payments. All these allegations are followed with a prayer for recovery in a lump sum, and for general relief.

The statement of the injuries, the incapacity, and the weekly wage plaintiff was theretofore earning embraced all the essential elements of a good cause of action, and it was not necessary that the proper measure, or any measure of damages, be stated in order to warrant a recovery. St. Louis & Southwestern Ry. Co. v. Jenkins, 89 S. W. 1106; Ara v. Ruthland, 172 S. W. 993. The fact that the plaintiff may have overestimated the extent of the injury or his resultant incapacity, or the amount of his average weekly wage, would not prevent the court or jury from awarding such compensation, as the facts proven would, under the law, entitle him to; nor would the fact that he sought to have a commutation of the damages to a lump sum prevent the court from applying the prescribed measure of damages applicable to all but exceptional cases, in the event plaintiff failed to bring himself within the exception. As may readily be seen, the true justice of the case might be impossible of application if the jury in such case be forced to the alternative of awarding compensation in a lump sum or nothing.

The motion for rehearing will be overruled.