## GUARANTEE FUND LIFE ASS'N v. BARCLAY. (No. 717.)

Court of Civil Appeals of Texas. Waco. Nov. 1, 1928.

Rehearing Denied Dec. 6, 1928.

Trippett, Richey & Sheehy, of Waco, for appellant.

Neff, Hale & Neff, of Waco, for appellee.

STANFORD, J. This suit was filed by appellee against appellant to recover damages for an alleged breach of contract to deliver to appellee a certain policy of insurance for $10,000, appellee alleging that appellant had entered into a binding contract to deliver to him said policy for said amount on his life, which contract appellant breached. On answers of the jury to special issues, the court entered judgment for appellee for $2,655.40.

Appellant has duly appealed, and presents the record here for review.

Under appellant's first three propositions, it contends the court should have instructed a verdict in its favor upon grounds not necessary here to state. For cause of action, appellee alleged, in substance, that he executed an application for a policy of $10,000 for a premium rate of $206.30 per annum for the first five years, and $412.60 per annum thereafter, and that appellant accepted said application, whereby a valid and enforceable contract was made; that appellee, relying upon said contract, surrendered a similar policy with the Ætna Life Insurance Company in the sum of $10,000; that thereafter appellant tendered and offered to deliver to appellee its life policy for $10,000, for a premium rate of $346.50 per annum for the first five years, and $693 per annum thereafter, but appellant refused to tender the policy with the premium rate as specified in the application, and by reason of appellant's failure to deliver the policy contracted for, appellee sustained damages to the amount of the difference between the premiums on the policy contracted for and the premiums on the one tendered for the period of appellee's life expectancy, in the sum of $5,187.40. Appellant answered, in effect, by general denial, and that the medical examination of appellee showed that he was of overweight and therefore a substandard risk, and that appellant issued to appellee a policy at a substandard rate, such rating being based on appellee's physical disability, and that if any notice was sent to appellee to the effect that appellant had accepted his application as written, such notice was sent through mistake of some clerk who had no authority to accept or reject said application.

All of the evidence, without any conflict, established that the rate for a substandard risk is much higher than for a standard risk. After the application had been executed by appellee, reciting, in effect, that he had never been classed as a substandard risk, and a premium rate for a standard risk at appellee's age, to wit, $206.30 per annum for the first five years and $412.60 per annum thereafter, quoted in same, appellee carried said application to the medical examiner, who, after examining appellee, made his detailed report to appellant in part II of said application, in which appellee was classed as of overweight and by reason thereof not a first class, but a medium, risk by said examining physician. The application, also the medical examiner's report, was sent to F. A. Porterfield, state agent for appellant, at Fort Worth, and by him sent to the home office of appellant at Omaha, Neb., and, on being examined by the risk committee at Omaha, who were charged with the duty of passing upon all applications and medical reports connected therewith, and classifying all risks, they

decided appellee was a substandard risk by reason of overweight and rated his application up by reason of his being a substandard risk, and wrote the $10,000 policy called for by the application, except the premium rate was higher, as above stated. It appears from the evidence of J. F. Kinney, assistant secretary of appellant at Omaha, Neb., which evidence is not contradicted, that a stenographer in his office, through a mistake, in sending out notices on other applications, sent a card to Mr. Glass at Waco, the local agent who took appellee's application, notifying him that appellee's application had been accepted and the policy issued. When Mr. Glass received this card he so notified appellee. A little later the state agent at Fort Worth received the policy issued by appellant, No. 801334, but showing the risk committee had rated up appellee's application as a substandard risk and requiring the payment of the substandard rate of premium. This policy was tendered to appellee, but he refused to pay the higher rate and receive it.

We do not find it necessary to decide whether or not article 5043, Revised Statutes, has any application to this suit for damages for breach of contract for a policy of insurance, as contended by appellee. If the representation of appellee in the application to the effect that he had never been rated up, that is, given a substandard rating, had been relied upon by appellant, and, so relying, it had issued the policy giving him the rate for a standard risk, and appellee had died, in a suit by his beneficiary to recover the loss, then the materiality of said representation under the provisions of article 5043 would have been important. But the record shows appellant did not rely upon said representation, but through its risk committee, who were its executive officers at Omaha, Neb., it discovered from the medical examiner's report, which was a part of the application, that appellee was not a standard risk and that the policy could not be issued at the standard premium rate, so said committee rated up the application by reason of appellee's being a substandard risk, and appellant issued a policy, but on the substandard or higher premium rate. The effect of appellant's acts was to reject appellee's application or proposition to purchase the insurance for a standard premium rate at his age, and to make him a counter proposition to sell him the same policy for a substandard or higher premium rate. As we view the case, the representation of appellee in the application to the effect that he had never been rated up as a substandard risk was, under the facts of this case, unimportant, and the finding of the jury to the effect that said representation was not material to the risk was a finding on an immaterial matter.

We also think the finding of the jury to the effect that the agent of appellant, at the time he or she mailed the card of notification in evidence, was acting within the scope or apparent scope of his or her employment, was not a finding upon any ultimate issue, but upon a matter that was purely evidentiary. The ultimate issue involved, determinative of the question of liability of appellant, if the evidence had been sufficient to raise same, would have been whether or not the appellant, through its risk committee or some other agent authorized by it to do so, approved appellee's application as written by him—that is, as a standard risk. The sending out of the card could not be construed as the act of approval of the application, but only as some evidence thereof to be considered by the jury, together with the evidence that said card was sent out by mistake, together with all other evidence, if any, bearing upon the ultimate issue as to whether or not appellant, by some agent authorized to so do, approved same. A trial court should submit only ultimate issues raised by the evidence and not issues only evidentiary. Kansas City, etc., Ry. Co. v. Estes (Tex. Civ. App.) 203 S. W. 1155 (page 1156); Texas Employers' Ins. Ass'n v. Downing (Tex. Civ. App.) 218 S. W. 112 (writ refused); Manes v. J. I. Case Threshing Machine Co. (Tex. Civ. App.) 204 S. W. 235; Dark v. Indiana Silo Co. of Texas (Tex. Civ. App.) 204 S. W. 245. However, we think the trial court should have held as a matter of law that appellant never accepted appellee's application as written by him, and so no contract for insurance was ever consummated. Each of the three members of the risk committee testified that said committee did not approve said application, but that they did rate it up as a substandard risk and approve it as rated. This evidence is corroborated by the following: The local medical examiner's report, which was a part of the application, and so, before the risk committee showed appellee to be overweight and so, in effect, a substandard risk. It is not likely said committee, with this report before it, would have classed appellee as a standard risk. Assistant Secretary Kinney, who was charged with the duty of issuing policies on applications approved by the risk committee, testified that, when he received appellee's application from the risk committee, it had been rated up by said committee and approved as rated, and he did issue the policy on the rated-up basis. The application shows that in the beginning of appellee's application the risk committee wrote, "Rated up to $346.50," and in a blank on said application to be filled out by said committee where appellee's age was stated as 50 years, said committee drew a circle around the "50" and wrote just above, "Rated up to 59," and through the annual premium, "$206.30," drew a line and wrote in lieu thereof, "$346.50," and appellee's application, as thus rated up, was attached to the policy No.

801334 issued at the rated-up premium rate, and sent out for delivery, together with a slip to be signed by appellee evidencing his agreement to being rated up, if he accepted the policy. The report of said committee was in writing and indorsed on appellee's application, and shows upon its face, as above stated, that said committee rated up appellee's age from 50 to 59 years, and the annual premium from $206.30 to .$346.50. This report of said committee was made on June 13, 1927, said report concluding as follows: "Application examined and approved June 13, 1927, as rated." On the same day this report was made, June 13, 1927, the policy No. 801334 was actually issued on the rated-up or substandard premium rate, and on June 15, 1927, said policy was mailed out to Porterfield, state agent, for delivery, if accepted, with the following indorsed upon the second page:

"By agreement with the insured, the annual premium hereunder for each of the first five years shall be $346.50 and for the sixth and subsequent years $693.00. J. F. K. 6/13/27."

All of the evidence, both of the four witnesses as stated above, and the entire record of what was actually done, is direct and positive that appellee's application was not approved except as rated up. There is no evidence to the contrary, unless it be the card that was sent out June 14, 1927. But we must remember on June 13, 1927, the risk committee had rated up said application, the policy had issued No. 801334, and the concluding clause of said report read: "Application examined and approved June 13th, 1927, as rated." The next day, June 14th, said card was sent out, being as follows:

"Omaha, 6–14–27.

"Applications of the following parties have been approved and policies issued: No. 801334, Goodhue W. Barclay, Waco, Texas."

The number, 801334, was the correct number of the policy appellant had issued the day before on appellee's application, "approved as rated." There can be no question but that the policy No. 801334, referred to in the card of notification, was the same policy, having the same number, as the policy which had been issued the day before on the rated-up application. Evidently the stenographer, in sending out said card, failed to insert the words, "as rated," after the word "approved." From the reading of said card, we infer it was a report on a list of applications, and doubtless others were not rated up, and so if she had written, "as rated," after "approved," it would not have spoken the truth as to the others. Assistant Secretary J. F. Kinney, who had charge of sending out such notices and issuing policies on applications approved by the risk committee, testified that he did not send out said notice nor did he authorize any one else to do so; that said notice was sent out by mistake; and, further:

"The clerk who sent this notice in question to Mr. Glass was Miss Berdena Hawley, who at that time had been in the employ of our association for less than three months, and this mistake and others on her part led up to her discharge in the early summer of 1927."

There is no evidence of any probative force that appellant ever accepted or approved appellee's application as written by him. We think the court was in error in failing to instruct for appellant. The case appearing to have been fully developed, the judgment of the trial court is reversed, and judgment here rendered for appellant.

## On Motion for Rehearing.

The evidence in this case established that as soon as appellant learned that appellee objected to the policy issued on the rated-up basis and refused to accept same, it notified appellee by wire that it could not issue to him a policy on the standard basis as applied for; and appellee was so notified in ample time to have continued in good standing his similar $10,000 policy with the Ætna Life Insurance Company, if he so desired. In fact, the jury found that after appellee learned that appellant refused to issue him a policy at a standard rate, he did not use reasonable diligence to keep his policy with the Ætna Life Insurance Company in force. So if appellee sustained any damages by reason of the card being sent out by mistake, it was because he elected to rely upon what he claimed was an acceptance of his application, after he had been notified that it had not and could not be accepted as written and that said card was sent by mistake, rather than protect himself by keeping the Ætna policy in force. We do not think he is entitled to any relief upon the ground of estoppel.